UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

| | |
|---|---|
| GEOMATRIX SYSTEMS, LLC, | : |
|     Plaintiff and Counterclaim-Defendant, | : Case No. 3:20-cv-01900-JBA |
| -against- | : |
| ELJEN CORPORATION, | : |
|     Defendant and Counterclaim-Plaintiff. | : |

---

### DEFENDANT ELJEN CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL AND EXTEND FACT DISCOVERY DEADLINE

Pursuant to Rule 37 of the Federal Rules of Civil Procedure and the Local Civil Rules, Defendant Eljen Corporation ("Eljen") respectfully submits this Memorandum of Law in Support of its Motion to Compel Plaintiff Geomatrix Systems, LLC ("Plaintiff") to revise its privilege log and produce non-privileged documents. As set forth below, the Court should compel Geomatrix to (1) revise its privilege log to separately log email attachments to allow Eljen to assess Plaintiff's privilege assertion, (2) produce non-privileged transmittal and technical correspondence as well as email attachments[1] comprising pre-existing or otherwise non-privileged records, and (3) produce Plaintiff's patent prosecution attorneys' non-privileged internal work papers because they were not prepared in anticipation of litigation.

### I.    RELEVANT BACKGROUND

Geomatrix's operative Complaint (Doc. No. 56) asserts that one line of Eljen's wastewater products called the Mantis, which is used in leaching fields for septic systems, infringes four Geomatrix patents that all arise from the same patent application and share the same patent

---

[1] When such non-privileged attachments are produced, the associated email should also be produced at least in redacted form to show the date the attachment was sent and its recipients.

specification. On June 22, 2021, Eljen filed its answer, affirmative defenses, and counterclaims to the operative Complaint (Doc. No. 61). Among the defenses and claims Eljen asserts, particularly relevant to this motion are (1) that Eljen—not Potts and Geomatrix—was the first to invent and the first to file a patent application with the USPTO covering leach fields relating to this case,[2] (2) that Potts committed inequitable conduct by misrepresenting evidence to the United States Patent and Trademark Office (USPTO) during prosecution of his patent application (namely, that computer meta data of photographs of the supposed "leach field system" that he built "confirmed" that he reduced his alleged invention to practice before February 28, 2005),[3] and (3) that Potts' 2006 patent application does not support the invention he claimed nearly a decade later during prosecution before the USPTO, only after he had full knowledge of Eljen's Mantis product. Particularly in light of these defenses, the dates on which Geomatrix transmitted certain documents to its prosecution attorney and their preparation of certain documents for public filing with the USPTO are critically important to Eljen's defense of this matter.

On March 5, 2021, Eljen served Geomatrix with Eljen's First Set of Requests for Production of Documents ("Eljen's Requests") directed at these critically important issues and others. *See* **Ex. A** to the Declaration of John L. Cordani, Jr. Declaration ("Cordani Decl."). On April 19, 2021, Geomatrix served its Objections and Responses to Eljen's Requests. *See* **Ex. B** to the Cordani Decl. Geomatrix objected to all but two of Eljen's 87 requests on the basis of "attorney-client privilege or any other applicable privilege or protections."

Geomatrix did not initially produce a privilege log regarding the documents it was

---

[2] In addition to Eljen's indisputably earlier filing with the USPTO, Eljen's defense in this regard is supported by the existence of Eljen's inventor's laboratory notebook which reflects invention of the Mantis product more than a month before Geomatrix's earliest claimed invention date.

[3] Eljen's defense of inequitable conduct was required to be pleaded with specificity under Fed. R. Civ. P. 9. Notably, Geomatrix did <u>not</u> challenge the sufficiency of Eljen's pleading by filing a motion to dismiss or motion to strike.

2

withholding from production on the basis of privilege. Only after demand from Eljen did Geomatrix serve Eljen with its initial privilege log (the "Initial Log") on October 1, 2021. *See* **Ex. C** to the Cordani Decl. Geomatrix's Initial Log identified **1,649** documents withheld on the purported basis of the attorney-client privilege and/or the work product doctrine. Many of the entries provided conclusory or insufficient information to allow Eljen to assess Geomatrix's assertion of privilege. *See, e.g.*, Initial Log (Ex. C), PRIV entries 3-10, 15, 20-25, 27-28, 49-55, 61, 63, 65, 67, 69, 71, 73, 76, 78, 83, 91, 284, 285, 1594-95, 1601-02, 1608, 1624. Additionally, Geomatrix improperly withheld certain documents that were not prepared in anticipation of litigation on the basis of the work product doctrine, claiming that documents were withheld because they were prepared for the purpose of patent prosecution. *See, e.g.*, Initial Log (Ex. C), PRIV entries 14, 18-19, 25, 26, 29-48, 56-59, 74-75, 70-81, 84-88, 90-91, 182, 185, 189-196, 200-211, 213-214, 221-231, 233, 243-254, 272-273, 275-276. By letter dated October 6, 2021, Eljen raised these and several other issues with Geomatrix. *See* **Ex. D** to the Cordani Decl. Eljen's letter explained that communications with counsel are only privileged to the extent they seek or provide legal advice and that the attachment of pre-existing, non-privileged records are not privileged. Eljen further noted that the work product doctrine does not apply to documents prepared for the purpose of patent prosecution.

On October 12, 2021, Geomatrix served Eljen with an amended privilege log purporting to have addressed all of the issues raised in Eljen's October 6th letter (the "Amended Log"). *See* **Ex. E** to the Cordani Decl. On October 15, 2021, Geomatrix served Eljen with a supplemental privilege log, which logged an additional **1,179** documents claimed to be privileged (the "Supplemental Log" and together with the Amended Log, the "Amended and Supplemental Log"). *See* **Ex. F** to the Cordani Decl. Geomatrix revised its log to assert that certain communications were now

purportedly for the purpose of "seeking legal advice," when that claim had not been previously made. *Compare, e.g.*, Initial Log (Ex. C), PRIV entry 60 *with* Amended Log (Ex. E), PRIV entry 60. Additionally, Geomatrix – now apparently agreeing with Eljen work product doctrine does not apply to documents prepared for the purpose of patent prosecution – withdrew its claims of work product for these documents. However, instead of producing these documents, Geomatrix changed its purported basis for withholding patent prosecution documents from work product to attorney-client privilege, even though the documents were not communications and had not previously been withheld on the basis of attorney-client privilege. *Compare, e.g.*, Initial Log (Ex. C), PRIV entries 18-19 *with* Amended Log (Ex. E), PRIV entries 18-19.

Geomatrix's Amended and Supplemental Log fails to resolve the deficiencies in Geomatrix's Initial Log. First, many of the documents Geomatrix now asserts attorney-client privilege over do not even appear to be communications. *See, e.g.*, Amended Log (Ex. E), PRIV entries 7, 19, 18-59, 16377-39, 1641. Second, while Geomatrix now asserts that certain communications were for the purpose of "seeking legal advice" in response to Eljen's October 6th letter, that does not appear to be accurate in light of the Initial Log. Third, the Amended and Supplemental Log asserts attorney-client privilege over attachments to emails without any additional description or separate logging of the attachments or claim that the attachments themselves are privileged. *See, e.g.*, Amended Log (Ex. E), PRIV entries 60, 62, 64, 66, 68, 70, 72, 77, 82, 89. Eljen communicated each of these issues to Geomatrix in an email dated October 12, 2021. *See* **Ex. G** to the Cordani Decl. On October 22, 2021, the parties held a meet and confer conference via video-conference. The parties reached an impasse without resolving any of these three issues discussed above.

On October 15, 2021, Eljen served Geomatrix's prosecution attorneys, Michael Blake and

Fred Grasso, with subpoenas. *See* **Ex. H** to the Cordani Decl. On November 5, 2021, Michael Blake, Fred Grasso, and Geomatrix filed their objections and responses to the subpoenas.[4] *See* **Ex. I** to the Cordani Decl**.** Geomatrix and Attorneys Blake and Grasso objected to every single document request on the basis of "attorney-client privilege or any other applicable privilege or protections." On November 8, 2021, Geomatrix served its privilege log in response to the subpoena to Michael Blake (the "Blake Log"). *See* **Ex. J** to the Cordani Decl. The Blake Log suffers from the same deficiencies as the Amended and Supplemental Log discussed above. Attorney Blake's deposition was conducted on November 12, 2021. Geomatrix's improper withholding of documents and inadequate logging of others impeded Eljen's ability to fully depose Attorney Blake about the critical issues of inventorship, reduction to practice, and the origins of certain concepts in Geomatrix's patent application. In particular, Eljen's ability to question Attorney Blake was hampered by Geomatrix's and Blake's failure to comply with their obligations to log email attachments separately, to describe logged documents in sufficient detail to allow Eljen to assess the claim, and to produce non-privileged transmittal communications, attachments, and internal patent prosecution work papers. *See* **Ex. K** to the Cordani Decl., at 190-191.

On November 19, 2021, Eljen again informed Geomatrix of its discovery deficiencies and, sought to determine if Geomatrix was willing to reconsider its position despite reaching an impasse during the parties' meet and confer conference. *See* **Ex. L** to the Cordani Decl. On November 23, 2021. Geomatrix rejected Eljen's request to reconsider its position.

Finally, on November 23, 2021, Geomatrix also served its privilege log in response to subpoena to Fred Grasso (the "Grasso Log"). *See* **Ex. M** to the Cordani Decl. The Grasso Log

---

[4] Geomatrix's counsel, Conway Stoughton LLC and Honigman LLP, are also representing Attorneys Blake and Grasso. Counsel has filed a single objection and response on behalf of Geomatrix and Attorney Blake and Geomatrix and Attorney Grasso respectively.

attempts to address the issues in the Amended and Supplemental Log and the Blake Log by recasting their privilege claim. The Grasso Log now claims all of Grasso's internal work papers were prepared in anticipation of litigation. *See* Grasso Log (Ex. L). This is despite the fact that (1) Grasso was clearly Geomatrix's patent prosecution attorney, and (2) Geomatrix's Amended and Supplemental Log drew the distinction between Grasso documents prepared in anticipation of litigation and Grasso documents prepared for purposes of patent prosecution. Thus, it appears that Geomatrix is now intentionally blurring distinctions between these documents that were apparent when they were initially withheld as privileged, all to obfuscate Eljen's ability to pursue documents that are not privileged.

In light of the foregoing history, Eljen has no choice but to seek the Court's resolution of the fundamental legal disagreements between the parties as to these privilege issues.

## II.    LEGAL STANDARD

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets forth the scope and limitations of permissible discovery. Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. However, when a party withholds an otherwise discoverable document on the basis of privilege or work product, Rule 26(b)(5) *requires* that party to "describe the nature of the documents, communications, or tangible things not produced or disclosed – and to do so in a manner that . . . will enable other parties to assess the claim." Fed.R.Civ.P. 26(b)(5)(A)(ii). This district's local rules *require* that "when a claim or privilege or work product protection is asserted in response to a discovery request [ ... ] the party asserting the privilege or protection shall provide [ ... ] a privilege log." D. Conn. L. Civ. R. 26(e).

"'[T]he burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship.'" *von Bulow v. von Bulow,* 811 F .2d

6

136, 144 (2d Cir.1987), *quoting In re Grand Jury Subpoena Dated Jan. 4, 1984,* 750 F.2d 223, 224 (2d Cir.1984). Thus, the party seeking to invoke the privilege must establish all elements of the privilege. *Bowne of New York City, Inc. v. AmBase Corp.,* 150 F.R.D. 465, 470 (S.D.N.Y.1993) (citing cases). "To invoke the attorney-client privilege, a party must demonstrate that there was: (1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice." *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996). The scope of the work-product doctrine is set forth in Fed.R.Civ.P. 26(b)(3). The general rule, subject to certain exceptions, is that a party may not discover documents and tangible things prepared in anticipation of *litigation*. Fed.R.Civ.P. 26(b)(3)(A).

"An essential step in meeting the burden of establishing the existence of a privilege or an immunity from discovery is the production of an adequately detailed privilege log sufficient to enable the demanding party to contest the claim." *Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co.,* 240 F.R.D. 44, 47 (D.Conn.2007) (citations and internal quotation omitted). Local Rule 26(e) requires the privilege log to contain the following information: (1) The type of document or electronically stored information; (2) The general subject matter of the document or electronically stored information; (3) The date of the document or electronically stored information; (4) The author of the document or electronically stored information; and (5) Each recipient of the document or electronically stored information. *See also Horace Mann Ins. Co.*, 240 F.R.D. at 47 ("The privilege log should: identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure. Other required information, such as the relationship between individuals not normally within the privileged relationship, is then typically supplied by

7

affidavit or deposition testimony.") (quoting *United States v. Constr. Prod. Research,* 73 F.3d 464, 473 (2d Cir.1996)). Courts construe the privilege "narrowly" because the result is to render relevant information undiscoverable. *A & R Body Specialty & Collision Works, Inc. v. Progressive Cas. Ins. Co.,* No. 3:07-cv-929 (WWE), 2013 WL 6044342, at *1 (D. Conn. Nov. 14, 2013).

### III.   ARGUMENT

Two legal principles establish Eljen's entitlement to the relief it seeks through this motion to compel. First, attachments to emails must be separately assessed for privilege and separately logged if such a privilege assertion is claimed. This is for good reason. The fact and date on which a non-privileged document was attached to an email and sent to an attorney is not privileged. This same principle applies to the use of emails as transmittals for non-privileged evidence or facts, even the email-attachment mechanism was not used. This legal principle is particularly important here because this case involves competing claims about invention dates and issues relating to whether Geomatrix misrepresented certain evidence to the USPTO during its prosecution of the patents at issue. Second, the caselaw is clear that the work-product privilege does not apply to materials prepared by an attorney for the purposes of patent prosecution. Patent prosecution is not litigation, and unlike other areas of legal representation, the goal of patent prosecution is the public filing of documents and information before the USPTO. Accordingly, the internal work papers of a patent prosecution attorney—which are not attorney-client privileged because they are not communications—are not privileged and must be produced. These principles of law are discussed in turn below.

### A.   Geomatrix Failed to Properly Log Email Attachments Impeding Eljen's Ability to Assess the Privilege Claim

The Amended and Supplemental Log, the Blake Log and the Grasso Log do not comply with the Local Rules. As discussed above, Local Rule 26(e) requires that privilege logs must

8

identify: "(1) The type of document or electronically stored information; (2) The general subject matter of the document or electronically stored information; (3) The date of the document or electronically stored information; (4) The author of the document or electronically stored information; and (5) Each recipient of the document or electronically stored information." L. Civ. R. 26(e). Email attachments must have a complete, separate log entry. *See NovaFund Advisors, LLC v. Capitala Group, LLC*, 3:18-CV-01023 (MPS), 2021 WL 2109112, at *1 (D. Conn. May 25, 2021) ("[C]ourts across the country have held that e-mail attachments must have a complete, separate log entry. And [b]ecause privilege is assessed separately for emails and attachments federal courts generally expect that attachments ... need to be treated separately and logged as such.") (internal citations omitted)); *In re Application of Chevron Corp.*, 2013 WL 11241413, at *5 (D.D.C. Apr. 22, 2013) ("[F]ederal courts generally expect that attachments, like earlier strings in e-mail correspondence, need to be treated separately and logged as such") (quoting *Abu Dhabi Commercial Bank v. Morgan Stanley & Co., Inc.*, 2011 WL 3738979, *4 (S.D.N.Y. Aug. 18, 2011)). As discussed above, Geomatrix, Blake, and Grasso have failed to separately log attachments to emails or provide a basis to claim privilege over such documents in compliance with the Local Rules. Geomatrix's failure to do so has hindered Eljen's ability to evaluate the privilege claim and take additional discovery.

First, Geomatrix, Blake, and Grasso must provide an independent basis for asserting privilege over each attachment. Otherwise non-privileged materials do not become privileged by merely transmitting them to counsel. *See Upjohn Co. v. U.S.,* 449 U.S. 383, 395 (1981) (the privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts"); *Buxbaum v. St. Vincent's Health Servs., Inc.,* No. 3:12-cv-117 (WWE), 2013 WL 74733, at *5 (D. Conn. Jan. 7, 2013) ("A document . . . is not privileged merely because it

9

was sent or received between an attorney and the client. The document must contain confidential communication relating to legal advice.")) (citation omitted). At deposition, Blake conceded he did not review any email attachments to determine if they were independently privileged. *See* **Ex. K** to Cordani Decl., at 40.

Second, by failing to state an independent basis for asserting privilege over attachments, Eljen cannot determine what was sent to Geomatrix's prosecution attorneys when. The dates on which otherwise non-privileged materials were transmitted to counsel are not privileged. *See Bolorin v. Borrino,* 248 F.R.D. 93, 95 (D. Conn. 2008) (party asserting privilege bears burden of providing a privilege log that contains sufficient detail to allow for meaningful review); *Jansson v. Stamford Health, Inc.,* 312 F. Sup. 3d 289, 299 (D. Conn. 2018) (party's right to succeed upon privilege assertion is conditioned upon an adequately detailed privilege log). As discussed above, the dates on which otherwise non-privileged materials were transmitted to attorneys is critically important to the issues of inventorship and Eljen's inequitable conduct claim. Geomatrix's (and Blake's and Grasso's) failure to properly log documents has interfered with Eljen's ability to depose each witness as they (not surprisingly) do not recall the specific dates on which particular documents were sent to counsel. *See, e.g.*, **Ex. K** to Cordani Decl., at 69-70 (testifying that he could not recall if or when Potts' 2004 invention disclosure (deposition Exhibit 4) was sent to him); and Blake, Tr., at 73-74 (testifying that he could not recall if or when Potts' protype photographs (deposition Exhibit 5) were sent to him).

    **B.**    **Correspondence that Merely Transmits, Encloses or Attaches Non-Privileged Documents or Information Is Not Privileged**

While Geomatrix *now* characterizes many documents "as seeking legal advice", that claim is suspicious in light of the fact that Geomatrix's Initial Log made no such claim. *Compare, e.g.*, Initial Log (Ex. C), PRIV entry 60 *with* Amended Log (Ex. E), PRIV entry 60. To the extent that

the emails between Geomatrix and its patent prosecution attorneys merely transmit pre-existing evidence, documents, or screenshots, they are not privileged and should be produced. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 319 F.R.D. 100, 104 (S.D.N.Y. 2017) (communications that were "merely transmittal letters or emails that enclose or attach other documents" are not privileged even if "sent to or from counsel"). Similarly, "[c]ommunications of 'technical information' between client and attorney for the purpose of submission to the [Patent and Trademark Office] are not privileged. Further, underlying facts do not become privileged simply because they were transmitted from client to attorney." *Genal Strap, Inc. v. Dar*, CV 2004-1691 (SJ) (MDG), 2006 WL 525794, *2 (E.D.N.Y. March 3, 2006).

### C. Neither the Work Product Nor the Attorney-Client Privilege Apply to Geomatrix's Prosecution Attorneys' Internal Work Papers

Geomatrix, Blake, and Grasso have also improperly asserted work product and/or attorney-client privileges over Geomatrix's patent prosecution attorneys' internal work papers. In its Initial Log, Geomatrix asserted ***only*** work product privilege for many documents claiming that the material is "privileged work product … regarding patent prosecution strategy for family of patents-in-suit." *See, e.g.*, Initial Log (Ex. C), PRIV entry 18. However, "[w]ork product immunity does not shield all materials prepared by a lawyer. It applies only to documents such as memoranda, preliminary drafts of documents, recorded mental impressions, opinions, or conclusions of an attorney that were prepared with an eye towards ***litigation***. It does not apply to materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation or for other nonlitigation purposes" such as ***patent application preparation and prosecution***. *Weil Ceramics & Glass, Inc. v. Work*, 110 F.R.D. 500, 504–05 (E.D.N.Y. 1986) (emphasis added).

Materials prepared for purposes of patent prosecution are not entitled to work product privilege because patent prosecution is a nonlitigation purpose. *Id.*; *see also Genal Strap, Inc. v.*

11

*Par,* No. CV2004–1691 (SJ)(MDG), 2006 WL 525794, at *3 (E.D.N.Y. Mar. 3, 2006) ("[W]ork performed by an attorney to prepare and prosecute a patent application does not fall within the parameters of the work-product protection because it is not created 'in anticipation of litigation'"). Only patent prosecution work product that expressly "exhibit[s] a[] [patent prosecution] attorney's concern with possible *future* litigation" could potentially qualify as work product privileged. *Weil*, 110 F.R.D. at 504-05; *see also Application of Minebea Co., Ltd.*, 143 F.R.D. 494, 499 (S.D.N.Y. 1992) ("Generally, work performed by an attorney to prepare and prosecute a patent application does not fall within the parameters of the work-product protection"). "Accordingly, the preferred approach gives protection only to those documents or portions of documents that were ***prepared principally to assist in anticipated adversarial proceedings***." *Golden Trade, S.r.L. v. Lee Apparel Co.*, No. 90 CIV. 6291 (JMC), 1992 WL 367070, at *4 (S.D.N.Y. Nov. 20, 1992) (emphasis added); *see also Softview Computer Prods. Corp. v. Haworth, Inc.,* No. 97 Civ. 8815(KMW)(HBP), 2000 WL 351411, at *5 (S.D.N.Y. Mar. 31, 2000) ("Documents that are generated in connection with a patent application are not protected by the work-product doctrine simply because an issued patent may give rise to an infringement action."). Indeed, Geomatrix's Initial Log drew the distinction between work product from its patent prosecution attorney prepared for "patent prosecution strategy" and work product from its patent prosecution attorney prepared primarily to address future litigation. *Compare, e.g.*, Initial Log (Ex. C) PRIV entry 18 *with* PRIV entry 927.

Following Eljen's October 6th letter explaining that the work product doctrine does not apply to documents prepared for the purpose of patent prosecution, Geomatrix withdrew its claims of work product privilege for these documents in its Amended and Supplemental Log. The withdrawal of that assertion should have led to a production of these documents. Instead, however,

Geomatrix newly asserted an attorney-client privilege for these materials.[5] As discussed above, Geomatrix's later amendments to its privilege log sought to obfuscate this distinction that was apparently clear to Geomatrix's attorneys when its initial privilege log was prepared.

Even if this new assertion of attorney-client privilege is timely (which Eljen does not concede), many of the documents claimed as attorney-client privileged do not even appear to be communications. *See, e.g.*, Amended Log, PRIV entries 7, 10, 18-59, 16377-1639, 1641. Geomatrix is attempting to use the attorney-client privilege to effectively assert a work product privilege over the work papers and files of its patent prosecutor, thus completely undermining the legal distinction drawn by the above caselaw holding that internal patent prosecution work-papers are not work product privileged. Indeed, Mr. Blake testified that he has certain work papers that were not meant to be communications to the client. *See* **Ex. K** to Cordani Decl., at 60-62. Accordingly, such documents are plainly not privileged. *See SEC v. Beacon Hill Asset Management LLC*, 231 F.R.D. 134, 145 (S.D.N.Y. 2004) ("A [document] is not privileged simply because it is prepared by an attorney."); *Shih v. Petal Card, Inc.*, 2021 WL 4655921, at *6 (S.D.N.Y. Oct. 6, 2021) (same); *99 Wall Dev. Inc. v. Allied World Specialty Ins. Co.*, 2019 WL 2482356, at *2 (S.D.N.Y. June 14, 2019) (same); *Loftin v. Bande*, 258 F.R.D. 31, 35 (D.D.C. 2009) ("Drafts, standing alone, are not 'communications' and hence normally are not within the attorney-client privilege."). Therefore, all work documents prepared by Geomatrix's patent prosecution attorney should be produced because they are neither attorney-client nor work product privileged.

To the extent any of Attorney Blake's or Grasso's work papers were draft communications to the client, as Geomatrix claimed might be the case for some document during the parties' meet

---

[5] The Blake Log utilized the same characterization. Geomatrix has re-cast its privilege claim at least for the Grasso Log. Geomatrix claims Grasso's internal work papers were prepared in anticipation of litigation despite the fact that Grasso was Geomatrix's patent prosecutor, Geomatrix did not make any such claim in its Initial Log or Amended and Supplemental Log, and, as discussed above, the law draws a clear distinction.

and confer, then the privilege log is insufficient because it does not allow Eljen (or the Court) to evaluate the basis of the privilege or to distinguish such draft communications from other work papers created by the attorney which would not be privileged. When a party withholds otherwise-discoverable documents under a claim of privilege, it must "describe the nature of the documents ... in a manner that ... will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A); *see also U.S. v. Constr. Prods. Research, Inc.*, 73 F. 3d 464, 473 (2d Cir. 1996) ("The privilege log should.... identify each document and the individuals who were the parties to the communication, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure.") (quoting *Bowne v. N.Y.C., Inc.*, 150 F.R.D. 465, 474 (S.D.N.Y. 1993)).

## IV.  CONCLUSION

For the foregoing reasons, Defendant Eljen Corporation respectfully requests that the Court grant its motion to compel and order Plaintiff Geomatrix Systems, LLC to:

1. revise its privilege log to separately log email attachments to allow Eljen to assess Plaintiff's privilege assertion;

2. produce non-privileged transmittal and technical correspondence as well as email attachments comprising pre-existing or otherwise non-privileged records (When such non-privileged attachments are produced, the associated email should also be produced at least in redacted form to show the date the attachment was sent and its recipients.); and

3. produce Plaintiff's patent prosecution attorneys' non-privileged internal work papers because they were not prepared in anticipation of litigation.

Dated:  December 2, 2021	Respectfully submitted,

                            ROBINSON & COLE LLP

By: */s/ John L. Cordani, Jr.*
    John L. Cordani, Jr. (ct28833)
    280 Trumbull Street
    Hartford, CT 06103
    Tel. No. (860) 275-8210
    Fax No. (860) 275-8299
    Email:  jcordani@rc.com

    -and-

    Brian E. Moran (ct05058)
    Trevor L. Bradley (ct29992)
    1055 Washington Blvd.
    Stamford, CT 06901
    Tel. No.: (203) 462-7500
    Fax. No.: (203) 462-7599
    E-mail: bmoran@rc.com
    E-mail: tbradley@rc.com

    *Counsel for Eljen Corporation*