UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GEOMATRIX SYSTEMS, LLC
        *Plaintiff,*

              *v.*                              Civil No. 3:20cv1900 (JBA)

ELJEN CORPORATION,                              October 12, 2022
        *Defendant.*

## CLAIM CONSTRUCTION OF DISPUTED TERMS IN U.S. PATENT NO. 9,174,863, NO. 9,650,271, NO. 10,065875, AND NO. 10,392,278

Plaintiff Geomatrix Systems, LLC brought this action against Defendant Eljen Corporation alleging patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, *et seq*. Plaintiff seeks a determination that Defendant has infringed U.S. Patent Nos. 9,174,863; 9,650,271; 10,065,875; and 10,392,278 and has therefore competed unfairly in the marketplace in connection with the manufacture and sales of wastewater treatment systems, adversely impacting Plaintiff. On October 25, 2021, the parties submitted their joint claim construction and prehearing statement [Doc. # 80]. On March 14, 2022, the Court held a hearing during which the parties presented argument on the construction of the disputed claims in the various patents.

## I.    Background

Plaintiff's four patents at issue were invented by David Potts and share a nearly identical specification.[1] According to Plaintiff, the asserted patents improve prior

---

[1] Plaintiff and Defendant agree that all four patents come from the same patent family and share a similar specification. In fact, Defendant notes that the patents are "fundamentally dependent upon Mr. Potts's original disclosure" and thus, the differences in the specifications are not relevant to the claim construction dispute. (Def.'s Opening Markmen Br. [Doc. # 71] at 1 n.1.)

wastewater systems, "particularly for treatment and dispersal of water." (Pl.'s Opening Claim Construction Br. [Doc. # 70] at 4.) They describe "high aspect ratio conduits" that "offer greater oxygen transfer potential than prior art systems." (*Id.*) The system includes "dosing pipes" which are perforated to deliver wastewater to a series of channels (also referred to as "geonets") once the system is connected to a source of wastewater. (*Id.*; Patent '863, Pl.'s Ex. A [Doc. # 70-2] at 10:8-9.) The number of dosing pipes may vary and the channels "can be made of crushed stone, or plastic pieces, or other granular or permeable media in substitution for the 'geonet'." (Pl.'s Ex. A [Doc. # 70-2] at 10:23-25.) The channels, or geonets, are a generally rectangular volume formed into a "U" shape. (*Id.* at 10:36-39.) The channels are parallel, with at least two of the channels interconnected to each other at an end. (*Id.* claims 9, 19, 22.)

The parties dispute the proper construction of forty-two terms found throughout eighteen claims spanning the four patents at issue. To simplify the process, the Court has organized seven groups of like-terms as suggested by Plaintiff. (*See* Pl.'s Ex. L [Doc. # 70-13].) The disputed claims are as follows:

| Group A | |
|---|---|
| **'863 Patent, Claim 1** | "the separations having a spacing of one foot or more along their length without an intervening intersecting infiltrative surface that connects the adjacent channels within the spacing" |
| **'863 Patent, Claim 22** | "are separated along a majority of their lengths by two or more inches and each have a spacing of one foot or more along their length without an intersecting infiltrative surface that connects the adjacent channels within the spacing" |
| **'863 Patent, Claim 21** | "the separations have a spacing of one foot or more along their length without an intervening perpendicular infiltrative |

|  | surface that connects the adjacent channels within the spacing" |
|---|---|
| '863 Patent, Claim 28 | "spacings along their length of one foot or greater in which the surfaces are not interconnected by a third infiltrative surface traversing these spacings." |
| '271 Patent, Claims 1 and 10 | "sections of one foot or more along their length without an upright interconnecting infiltrative surface interconnecting them to a neighboring infiltrative channel" |
| '875 Patent, Claim 1 | "sections of one foot or more along its length without an upright interconnecting infiltrative surface interconnecting any of the three infiltrative channels to a neighboring infiltrative channel" |

| Group B | |
|---|---|
| '863 Patent, Claims 1 and 22 | "at least two channels being interconnected to each other below their uppermost surface" |
| '863 Patent, Claim 26 | "the first channel and the second channel being interconnected to each other at least below their uppermost surface." |
| '863 Patent, Claim 12 | "channels are interconnected at least at a bottom elevation" |
| '863 Patent, Claim 19 | "the channels of the plurality are interconnected" |
| '863 Patent, Claim 24 | "the majority of the channels of the plurality are interconnected" |

| Group C | |
|---|---|
| '863 Patent, Claim 1 | "a first wastewater delivery conduit" |
| '863 Patent, Claims 22 and 26 | "a wastewater distribution conduit" |
| '271 Patent, Claims 1 and 10 | "a wastewater channel positioned to dispense wastewater to each of the three infiltrative channels" |

| '875 Patent, Claim 1 | "a wastewater dosing pipe positioned to dispense wastewater directly into each of the three infiltrative channels" |
|---|---|
| '278 Patent, Claim 1 | "a distribution conduit positioned and configured to dispense effluent to each of three or more high aspect ratio channels in the set of high aspect ratio channels" |
| '278 Patent, Claim 22 | "a distribution conduit positioned and configured to dispense wastewater effluent to each of the high aspect ratio channels in the set of high aspect ratio channels" |
| '278 Patent, Claim 33 | "a distribution conduit positioned and configured to dispense wastewater effluent to each of the high aspect ratio channels in the first set of high aspect ratio channels" |

| Group D | |
|---|---|
| '863 Patent, Claim 1 | "the area of the conduit having the wastewater egress openings" |
| '863 Patent, Claim 22 | "an area of the conduit having wastewater supply egress openings, traverses a majority of the channels of the plurality at an oblique or perpendicular angle" |
| '863 Patent, Claim 22 | "an area of the conduit having wastewater supply egress openings . . . traverses separations between adjacent channels of the plurality at an oblique or perpendicular angle" |
| '863 Patent, Claim 26 | "the area of the conduit having wastewater egress openings traverses the opposing infiltrative surfaces at an oblique or perpendicular angle" |
| '863 Patent, Claim 26 | "the area of the conduit having wastewater egress openings...traverses the separation between the opposing infiltrative surfaces at an oblique or perpendicular angle" |
| '863 Patent, Claim 1 | "traverses a majority of the paired infiltrative surfaces at an oblique or perpendicular angle" |

| Group E | |
|---|---|
| **'271 Patent, Claim 1** | "spacing connectors" |
| **'271 Patent, Claim 10** | "spacing connector" |
| **'875 Patent, Claim 1** | "separation spacer" |
| **'271 Patent, Claims 1 and 10** | "connected to the first infiltrative channel and connected to the second infiltrative channel" |
| **'278 Patent, Claims 1, 22, and 33** | "separation spacer" |
| **'278 Patent, Claim 22** | "separation spacer having a length and a first anchor" |
| **'278 Patent, Claim 22** | "the first anchor" |
| **'278 Patent, Claim 33** | "the first anchor . . . securing the separation spacer relative to a high aspect ratio channel" |
| **'278 Patent, Claim 22** | "the first anchor . . . securing the separation spacer relative to a high aspect ratio channel" |
| **'278 Patent, Claim 33** | "the first anchor securing the first separation spacer to a first high aspect ratio channel" |
| **'278 Patent, Claim 33** | "the first anchor engages the infiltrative side of the first high aspect ratio channel" |

| Group F | |
|---|---|
| **'271 Patent, Claims 1 and 10** | "configured to provide a spacing between the first infiltrative channel and the second infiltrative channel" |
| **'875 Patent, Claim 1** | "configured to provide a spacing between the first infiltrative channel and the second infiltrative channel" |

| Group G | |
|---|---|
| **'271 Patent, Claim 5** | "located and configured to maintain a relative position between the infiltrative |

| | channels that each connector is connected to" |
|---|---|
| '271 Patent, Claim 15 | "located and configured to maintain a spacing between infiltrative channels that the connectors are connected to" |
| '875 Patent, Claim 5 | "secured and configured so as to inhibit lateral movement between the first infiltrative channel and the second infiltrative channel" |
| '875 Patent, Claim 8 | "secured so as to inhibit lateral movement between only two infiltrative channels" |
| '278 Patent, Claim 1 | "separation spacer configured and positioned to inhibit movement of a high aspect ratio channel of the first pair of high aspect ratio channels in a first direction" |

## II.   Legal Standard

"[A] patent claim is that 'portion of the patent document that defines the scope of the patentee's rights.'" *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 321 (2015) (quoting *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996)). The words of a claim are generally given their customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005).

Since the Supreme Court's decision in *Markman*, "the construction of a patent, including terms of art within its claim, is exclusively within the province of the court." *Markman*, 517 U.S. at 372; *see also Teva*, 574 U.S. at 321 ("We held [in *Markman*] that the construction of a patent, including terms of art within its claim, is not for a jury but exclusively for the court to determine. That is so even where the construction of a term of art has evidentiary underpinnings.") (internal citations and quotation marks omitted).

"[A] judge, in construing a patent claim, is engaged in much the same task as the judge would be in construing other written instruments, such as deeds, contracts, or tariffs." *Teva*,

574 U.S. at 325 (citations omitted). "Courts construe claims by considering the evidence necessary to resolve disputes about claim terms and to assign a fixed, unambiguous, legally operative meaning to the claim." *Liquid Dynamics Corp. v. Vaughan Co.*, 355 F.3d 1361, 1367 (Fed. Cir. 2004) (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

But "there is no magic formula or catechism for conducting claim construction." *Phillips*, 415 F.3d at 1324. "Nor is the court barred from considering any particular sources or required to analyze sources in any specific sequence, as long as those sources are not used to contradict claim meaning that is unambiguous in light of the intrinsic evidence." *Id.* (citing *Vitronics*, 90 F.3d at 1583–84; *Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1367 (Fed. Cir. 2003)). By the same token, a district court need not construe every, or any, claim if the plain meaning is clear. *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1326 (Fed. Cir. 2012).

## III.    Claim Constructions

### A.    Disputed Terms

Defendant identifies six fundamental disputes between the parties. Resolution of these disputes will determine whether the Court will adopt Defendant's constructions, the plain meaning, or another construction for each disputed term. Each dispute is material to one or more term grouping.

### 1.  Whether the claims of the patents require a system with its conduit or pipe coupled to a source of wastewater (Group C).

| Group C | |
|---|---|
| '863 Patent, Claim 1 | "a first wastewater delivery conduit" |
| '863 Patent, Claims 22 and 26 | "a wastewater distribution conduit" |

| '271 Patent, Claims 1 and 10 | "a wastewater channel positioned to dispense wastewater to each of the three infiltrative channels" |
|---|---|
| '875 Patent, Claim 1 | "a wastewater dosing pipe positioned to dispense wastewater directly into each of the three infiltrative channels" |
| '278 Patent, Claim 1 | "a distribution conduit positioned and configured to dispense effluent to each of three or more high aspect ratio channels in the set of high aspect ratio channels" |
| '278 Patent, Claim 22 | "a distribution conduit positioned and configured to dispense wastewater effluent to each of the high aspect ratio channels in the set of high aspect ratio channels" |
| '278 Patent, Claim 33 | "a distribution conduit positioned and configured to dispense wastewater effluent to each of the high aspect ratio channels in the first set of high aspect ratio channels" |

The dispute here involves the construction of the Group C terms. For example, the language in claims 1 and 10 of the '271 Patent states: "a wastewater channel positioned to dispense wastewater to each of the three infiltrative channels." (Def.'s Ex. B [Doc. # 71-2] at 18:36-37, 19:40-41.) In claims 1, 22, and 26 of the '863 Patent, the disputed language references a "conduit" modified by the phrases "wastewater delivery" or "wastewater distribution." (Def.'s Ex. A [Doc. # 71-1] at 17:16, 18:41, 19:17.) Whereas the '875 Patent refers to "a waste water dosing pipe." (Def.'s Ex. C [Doc. # 71-3] at 18:25.) The critical disagreement is whether the "conduit" or "pipe" must be attached to a source of wastewater to give meaning to the modifying phrases "wastewater delivery" or "wastewater distribution."

Plaintiff argues that the claims do not require a system with a conduit or pipe coupled to a source of wastewater. (Pl.'s Resp. Claim Construction Br. [Doc. # 75] at 15-16.) Plaintiff contends that Defendant's arguments are improperly based in non-infringement arguments and that the distinction between a "wastewater delivery conduit" and a "delivery conduit,"

such that the former must be "coupled to" a source of wastewater for which Defendant advocates runs counter to the claims, the specification, and "basic logic." (*Id.* at 16.) For example, according to Plaintiff, "an exhaust pipe not yet 'coupled to' a car engine that produces exhaust fumes is still an exhaust pipe." (*Id.*) Plaintiff argues instead that the claim language "simply describes a relative position between the wastewater channel and the infiltrative channels, regardless of a connection to a wastewater source." (*Id.*) Plaintiff relies on the doctrine of claim differentiation, arguing that because dependent claim 3 of the '863 Patent adds the requirement that the channels "are in fluid communication with a septic wastewater supply," reading claims 1 and 10 of the '271 Patent to require the conduit to be coupled with a wastewater source would violate "the rule that independent claims should not be read to include the limitations added by dependent claims." (*Id.* at 16-17.) Plaintiff contends that because the specification uses "permissive" and "open-ended language" when describing the connection between dosing channels and a supply of wastewater, it does not support a construction requiring such connection. (*Id.* at 18-19.)

Defendant counters that "[a]ll three sources of intrinsic evidence under *Phillips*—the claim language, the Specification, and the prosecution history—weigh decisively in favor of Eljen's construction." (Def.'s Opening Markman Br. at 14.) First, Defendant relies on the claim language stating that a "wastewater delivery conduit" is not the same thing as a "conduit" in the same way that "a pipe on a store shelf is not a wastewater delivery conduit; only when it is connected to a source of wastewater does it become one." (*Id.* at 9.) Otherwise, Defendant argues, the use of the term "wastewater delivery" to modify "conduit" or "channel" would be surplusage. (*Id.* at 14-15.) Second, Defendant argues that the "preamble of every asserted claim recites that it is directed to 'a system for wastewater' (or equivalent such language)." (*Id.* at 15.) In Defendant's view, while not conclusive, this language suggests that its construction is correct. Defendant points out that the only figure describing the product

connected to a wastewater source is labeled "wastewater treatment system" while "every other description of the Figures where a source of wastewater is not shown, the patentee simply refers to 'conduits,' without calling them wastewater delivery conduits or systems." (*Id.*) Reading the patent as a whole, Defendant maintains, a person of ordinary skill in the art "would understand that the claims' requirement for a wastewater delivery conduit requires a conduit to be coupled to a source of wastewater." (*Id.*) Finally, Defendant argues that during the prosecution of the '271 Patent, the patentee "distinguish[ed] the invention based on the premise that a 'wastewater channel' is present only after installation so that it is serving as a conduit for effluent . . . confirm[ing] that the invention is directed to a system where the conduit is coupled to a source of wastewater." (*Id.* at 16.)

Patent claims are part of a "fully integrated written instrument." *Markman*, 52 F.3d at 978. Defendant's construction would limit this language to require the system conduit or pipe to be connected to a source of wastewater, but that reading does not comport with a plain reading of the patent as a whole. Defendant's reliance on the fact that the preamble of every asserted claim recites that it is directed to "a system for wastewater" actually works against it. The specification merely informs the person of ordinary skill in the art that the claimed invention is *directed* to a wastewater source. *See Metabolite Laboratories, Inc. v Laboratory Corp. of Am. Holdings*, 370 F.3d 1354, 1362 (2004) (concluding that even though a claim preamble is not a technical limitation of a claim, "[a] preamble may provide context for claim construction"); *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1236-37 (Fed. Cir. 2017) (noting that preamble was "meant to describe the principal intended use of the invention"). This language does not suggest limitation that the dosing channel does not have to be connected to a supply of wastewater. Instead, the specification leaves open the possibility that water does not always flow through the dosing conduits. (Def.'s Ex. B [Doc.

71-2] at 2:40-43 ("*When the dosing channel is connected* to a supply of wastewater, wastewater *may* flow into pairs of infiltrative surfaces . . . .")) (emphasis added).

Moreover, reading the disputed claim 1 in the '875 Patent to require the system as a whole to be connected in some way to a wastewater source would be incompatible with claim 2, which states "[t]he wastewater treatment system of claim 1 wherein the infiltrative channels and the separation spacers are joined and movable as a unit for shipment." (Def.'s Ex. C [Doc. # 71-3] at 18:49-51.) It would be illogical to interpret "a wastewater dosing pipe" to describe a requirement that the pipe's relative position must be attached to a source of wastewater rather than the pipe's capability of being attached to a source of wastewater. *See, e.g., Allergan, Inc. v. Barr Labs., Inc.,* 501 F. App'x. 965, 970 (Fed. Cir. 2013) (construing claim term N(R 4) 2 as covering non-identical R 4 substituents, so as to be consistent with dependent claims that covered non-identical R 4 substituents).

Defendant's resort to reading specific embodiments into the claims to narrow them is unpersuasive. The "numerous embodiments provided" in the '271 Patent are "directed to wastewater leaching processes, systems, and articles of manufacture." (*Id.* 2:27-29.) But only some of them show conduits "coupled to" a source of wastewater. Others do not, and they need not. For instance, embodiments in the '863 Patent describe possible connections with a source of wastewater. ('863 Patent, Ex. A [Doc. # 71-1] at 15:30-31 (describing Figure 24 as "[o]ne or more dosing pipes 22 will be in fluid communication with the channels" and noting that in Figure 18 "the dosing pipe 22 may be configured to allow fluid such as wastewater to flow into the geonet.").) "[W]here the specification discloses different alternative embodiments, the claim is valid even if only one embodiment discloses corresponding structure." *Creo Products Inc. v. Presstek, Inc.*, 305 F.3d 1337, 1346 (Fed. Cir. 2002).

Therefore, the Court construes the term "wastewater delivery conduit" as a conduit that is capable of delivering wastewater, but not one that necessarily requires connection to a source of wastewater.

2.  **Whether the "spacing connector" and "separation spacer" elements in the '271, '875, and '278 Patents should be interpreted in light of the Specification's limited description of the invention as solely employing lines and anchors connected to the channels (Group E).**

| Group E | |
|---|---|
| **'271 Patent, Claim 1** | "spacing connectors" |
| **'271 Patent, Claim 10** | "spacing connector" |
| **'875 Patent, Claim 1** | "separation spacer" |
| **'271 Patent, Claims 1 and 10** | "connected to the first infiltrative channel and connected to the second infiltrative channel" |
| **'278 Patent, Claims 1, 22, and 33** | "separation spacer" |
| **'278 Patent, Claim 22** | "separation spacer having a length and a first anchor" |
| **'278 Patent, Claim 22** | "the first anchor" |
| **'278 Patent, Claim 33** | "the first anchor . . . securing the separation spacer relative to a high aspect ratio channel" |
| **'278 Patent, Claim 22** | "the first anchor . . . securing the separation spacer relative to a high aspect ratio channel" |
| **'278 Patent, Claim 33** | "the first anchor securing the first separation spacer to a first high aspect ratio channel" |
| **'278 Patent, Claim 33** | "the first anchor engages the infiltrative side of the first high aspect ratio channel" |

The parties next dispute the meanings of "spacing connector" and "separation spacer" found in Group E. Plaintiff argues that "spacing connector" and "spacing connectors," as recited in Claims 1 and 10 of the '271 Patent, needs no further construction because "it is clear on its face and should be accorded its plain and ordinary meaning" and "[t]here is 'a "heavy presumption" that claim terms carry their accustomed meaning in the relevant

community at the relevant time.'" (Pl.'s Opening Claim Construction Br. at 23 (quoting *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1355 (Fed. Cir. 2004)).) Accordingly, Plaintiff argues that the claim language in Claims 1 and 10 is clear. Plaintiff contends that not only is Defendant's "rewrite" is too narrow, but it "would read the connecting arrangement into the 'spacing connectors' term even though it is already described in the immediately following claim language." (*Id.* at 24.) Further, Plaintiff argues that Defendant's proposal to limit the broad and general term "spacing connector" to include only a narrow, specific embodiment described in the '271 Patent must be rejected because the specification expressly disclaims an intent to limit the claims to the embodiments disclosed in the specification. (*Id.* at 26.) Plaintiff argues that the same reasoning applies to Defendant's constructions of Claims 1, 22 and 33 of the '278 Patent and Claim 1 of the '875 Patent. (*Id.* at 27-28.)

With respect to the other disputed terms in the group, Plaintiff takes issue with Defendant's replacement of the terms "connected" and "engaged" with its own term "attached." (*Id.* at 28-30.)

Defendant argues that "[b]y relying solely on meaning extrinsic to the patents, Geomatrix's constructions would give Potts full rein to disingenuously re-define his 2006 invention many years later, after he had seen Eljen's Mantis products." (Def.'s Opening Markman Br. at 12.) Defendant notes that "the application contained no disclosure, mention, or even reference to the so-called "separation spacers" and "spacing connectors" that feature prominently in dozens of claims, including all of the independent claims of the '271, '278, and '875 Patents." (*Id.* at 19.) Therefore, Defendant argues that the Court should rely on a paragraph in the specification that describes "pairs of anchors" that are "attached to permeable sheeting on adjacent channels" and also attached to a "line" allowing the channels "to be spaced a predetermined amount in the ground to facilitate the backfilling of the volumes between adjacent channels." ('863 Patent, Ex. A [Doc. # 71-1] 15:32-51.) Plaintiff

14

argues that this is the only passage in the entire specification that "describes a device that could possibly be viewed as including the recited 'spacing connector' or 'separation spacer'." (*Id.* at 17-18.)

"An inventor is entitled to claim in a patent what he has invented, but no more." *MySpace, Inc. v. GraphOn Corp.*, 672 F.3d 1250, 1256 (Fed. Cir. 2012). Thus, when construing a claim, "there are two limiting factors—what was invented, and what exactly was claimed. To determine the former—what was invented—we look at the entire patent, with particular attention to the specification." *Id.* In some cases, it is possible to construe a claim term by applying "the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. "Spacing connectors" and "separation spacers" do not appear to have commonly understood meanings. Nor are the Patent applications themselves illuminating, as they do not discuss the meaning of the phrase "separation spacers" or "spacing separators."

As an initial matter, Plaintiff's reliance on *Home Diagnostics* for the proposition that there is a presumption that claim terms carry their relevant community meaning must be applied in context of the Federal Circuit's rejection of the placement of more reliance on extrinsic sources, such as dictionaries, than on intrinsic sources, such as a specification or prosecution history, in *Phillips*. 415 F.3d at 1320.

Next, Defendant cites to *Network Com., Inc. v. Microsoft Corp.*, 422 F.3d 1353, 1360 (Fed. Cir. 2005) to support its position, while Plaintiff disputes its relevance. In *Network Commerce*, the patentee advanced the broad, abstract meaning of "download component" as "any part of a system involved in the transfer of data from one computer to another." *Id.* The Court rejected this construction, however, observing that "the specification does not use the term 'download component,' presumably because this claim terminology was added during prosecution after the specification had been prepared." *Id.* However, the specification did describe a "download file" which was the "item correspond[ing] most closely to the

download component of the claims." *Id.* The specification said that the download file had a "component list" and an "executable boot program" that could read the list. *Id.* The Court therefore noted that "the specification makes clear that the download component must include a boot program, and that the boot program interacts directly with the operating system." *Id.* Thus, with the specification as its guide, the Court construed "download component" as "a file or program . . . that 1) requests [data]; 2) coordinates the download of electronic data; and 3) interacts directly with the operating system." *Id.* at 1361.

Plaintiff argues that this case is inapposite because "there was only one corresponding embodiment in the specification: a 'download file.'" (Pl.'s Resp. Br. at 26 (citing *Network Com.*, 422 F.3d at 1360–61).) "By contrast, here the specifications expressly contemplate a variety of embodiments and features, which enable different ways to achieve 'a spacing between the infiltrative channels.'" (*Id.*)

Plaintiff's reliance on the specification's contemplation of "a variety of embodiments and features" is misleading. The passage to which Plaintiff refers states: "The anchors 240 may be any suitable attaching device, including but not limited to staples, plastic staples, washers. The lines 244 may be any suitable line, including but not limited to nylon line, rope, twine, chain link." ('271 Patent, Ex. B [Doc. # 71-2] at 16:48-51.) This passage refers to the anchors and lines—which Plaintiff maintains should not be used to limit the meaning of "spacing connectors" and "separation spacers." Plaintiff also points to the embodiments shown in Figures 21-23 of the '271 Patent which "teach different types of spacing connectors and separation spacers in multiple embodiments to accomplish a principal object of creating aerobic treatment channels between spaced apart high aspect ratio infiltrative channels." (Pl.'s Resp. Br. at 25.) But, as Defendant argues, because Plaintiff seeks an effective filing date of 2006 for the asserted patents, their meaning must be interpreted based on those applications as they existed on the filing date. *See PC Connector Solutions LLC v. SmartDisk*

*Corp.*, 406 F.3d 1359, 1363 (Fed. Cir. 2005). According to Defendant, "Potts' 2006 specification plainly did not contain the language Geomatrix now misleadingly relies upon." (Def.'s Reply Br. [Doc. # 78] at 9.)

In any event, *Network Commerce* is analogous. Claims 1 and 10 of the '271 Patent reference "spacing connectors," (Ex. B at 18:21, 19:28), and claim 1 of the '875 Patent references "separation spacer," (Def.'s Ex. C at 18:10.) The meaning of these terms is not clearly indicated by any other claims in these patents or the specification shared by all the patents, but they are described in the claims as "connecting" each "infiltrative channel" in order "to provide a spacing between" the channels. (*See* Ex. B at 18:21-27.) Additionally, the '278 Patent references "the first anchor . . . securing the separation spacer relative to a high aspect ratio channel." The specification describes the use of "anchors" and "lines" to facilitate the spacing of the channels. Thus, "anchors" and "lines" as those terms are described in the specification "correspond[] most closely to the" terms "spacing connectors" and "separation spacer." *See Network Commerce*, 422 F.3d at 1360. However, the Court agrees that the plain meaning of "connected" is effective in communicating its purpose and it will not replace it with the word "attached." *PCT Int'l Inc. v. Holland Elecs. LLC*, No. 12-cv-01797, 2014 WL 683876, at *1 (D. Ariz. Feb. 21, 2014) ("[I]f a disputed claim term has a plain and ordinary meaning such that it needs no clarification or explanation, the Court need not adopt a construction beyond that plain meaning.").

3.  **Whether the elements of the asserted claims dealing with how the separation spacer/spacing connector inhibit and facilitate movement be construed in light of the Specification's description of how the anchors and lines accomplish such action (Groups F and G).**

| Group F | |
|---|---|
| '271 Patent, Claims 1 and 10 | "configured to provide a spacing between the first infiltrative channel and the second infiltrative channel" |
| '875 Patent, Claim 1 | "configured to provide a spacing between the first infiltrative channel and the second infiltrative channel" |

| Group G | |
|---|---|
| '271 Patent, Claim 5 | "located and configured to maintain a relative position between the infiltrative channels that each connector is connected to" |
| '271 Patent, Claim 15 | "located and configured to maintain a spacing between infiltrative channels that the connectors are connected to" |
| '875 Patent, Claim 5 | "secured and configured so as to inhibit lateral movement between the first infiltrative channel and the second infiltrative channel" |
| '875 Patent, Claim 8 | "secured so as to inhibit lateral movement between only two infiltrative channels" |
| '278 Patent, Claim 1 | "separation spacer configured and positioned to inhibit movement of a high aspect ratio channel of the first pair of high aspect ratio channels in a first direction" |

Relatedly, the parties dispute whether the specification's description of the anchors and lines should be considered in construing the elements of the asserted claims dealing with the separation spacers and spacing connectors. Plaintiff argues that Defendant's proposed constructions are "improperly driven by its non-infringement arguments. (Pl.'s Resp. Br. [Doc. # 75] at 44-45.) Moreover, Plaintiff argues that the claims show that connector and

spacer terms do not require a collapsed condition and are not limited to allowing only a certain type of movement. (*Id.* at 45.) The claims in Groups F and G do not just describe how the spacer/connector facilitates movement of channels, as "the language 'located and configured to maintain a relative position' does not imply that the elements facilitate movement of the channels rather than 'maintain[ing]' existing static relationships between the channels." (*Id.*) Plaintiff further argues that the dependent claims already contain the language Defendant reads into the independent claims in Groups F and G, and therefore there is "a presumption that the limitation in question is not present in the independent claim." (*Id.* (citing *Phillips*, 415 F.3d at 1314-15).) Next, Plaintiff stresses that Defendant's construction relies only on a single embodiment, but the Specification contemplates more than one understanding of how the "forms can also be collapsed for shipping to a job site." (*Id.* at 47.) Finally, Plaintiff argues that Defendant's constructions are at odds with the prosecution history because "[n]othing in that history suggests that either the examiner or the applicant viewed the spacing connectors as limitations that 'facilitated movement' of the channels." (*Id.* at 48.)

Defendant argues that "these elements should be interpreted in a manner consistent with the specification's description of how the anchors and lines facilitate or inhibit movement respectively." (Def.'s Opening Markman Br. at 40.) In Defendant's view, the claim elements in the '271, '875, and '278 Patents breakdown into two categories: "those that describe how the spacer/connector facilitates movement of the channel (e.g., 'configured to provide a spacing'); and those that describe how the spacer/connector inhibits movement of the channel (e.g., 'configured as to inhibit lateral movement')." (*Id.* at 41.) Because the specification describes just one way anchors and lines can facilitate and inhibit movement of the channels, Defendant argues that its constructions are consistent with the specification. (*Id.* a 42; '863 Patent, Ex. A [Doc. # 71-1] 15:35-41 (stating that the channels can be

"collapsed (i.e. set close together) for shipping" and then "spaced a predetermined amount in the ground."), 15:45-48 (stating that the channels "are expanded to the maximum separation distance between them, given the length of the lines.").)

Similar to the Group E claims, the specification's discussion of "anchors" and "lines" maps onto the Group G claim language well. For example, Claim 5 of the '875 Patent states: "secured and configured so as to inhibit lateral movement between the first infiltrative channel and the second infiltrative channel." Then, the specification states: "To install the disclosed conduit[,] the channels 228,232, 236 are expanded to the maximum separation distance between them, given the length of the lines 244." Finally, Defendant's claim construction for Claim 5 states: "Secured to the infiltrative channels and configured to prevent the first infiltrative channel and second infiltrative channel from being expanded past the predetermined maximum separation distance between them." The specification is "always highly relevant" and "usually . . . dispositive" when performing claim construction. *Phillips*, 415 F.3d at 1315. This is because the person of ordinary skill in the art is "deemed to read the claim term...in the context of the entire patent, including the specification." *Id.* at 1313. As with the Group E claims, this passage of the Specification is highly relevant to the construction process. That this use of the Specification relies on a single embodiment does not disqualify its use here. As Defendant observes, the excluded embodiments that lack intervening infiltrative surfaces, and thus lack interconnection (under either party's definition), were not contemplated by the Group G claims. *See Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1383 (Fed. Cir. 2008) ("It is often the case that different claims are directed to and cover different disclosed embodiments."). Thus, the Court reads the Group G claims to limit what is claimed to prevent infiltrative channels from being expanded past a predetermined maximum separation distance between them.

However, the Court does not accept Defendant's reading of the Group F claims. Important to the process of construing a particular claim in question is the presence of other claims. *Phillips*, 415 F.3d at 1314. "For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Id.* at 1314-15.  Unlike with Defendant's constructions of the Group G claims, other dependent claims provide language similar to what Defendant reads into the disputed terms. Those dependent claims provide limitations that are indistinguishable from Defendant's reading of the Group F claims. For instance, Claim 13 of the '271 Patent states: "The wastewater treatment system of claim 10 wherein the spacing connectors are collapsible." (Ex. B [Doc. # 271] at 19:55-56.) Thus, to read Claims 1 and 10 of the same patent ("configured to provide a spacing between the first infiltrative channel and the second infiltrative channel") as Defendant suggests ("configured to be able to move the first infiltrative channel and the second infiltrative channel from a collapsed (i.e. set together) condition to be spaced apart a predetermined amount)) would render superfluous Claim 13.

### 4. Whether the claims of the '863 Patent require water egress openings in the separations between adjacent channels (Group D).

| Group D | |
|---|---|
| **'863 Patent, Claim 1** | "the area of the conduit having the wastewater egress openings" |
| **'863 Patent, Claim 22** | "an area of the conduit having wastewater supply egress openings, traverses a majority of the channels of the plurality at an oblique or perpendicular angle" |
| **'863 Patent, Claim 22** | "an area of the conduit having wastewater supply egress openings . . . traverses separations between adjacent channels of the plurality at an oblique or perpendicular angle" |

| '863 Patent, Claim 26 | "the area of the conduit having wastewater egress openings traverses the opposing infiltrative surfaces at an oblique or perpendicular angle" |
|---|---|
| '863 Patent, Claim 26 | "the area of the conduit having wastewater egress openings...traverses the separation between the opposing infiltrative surfaces at an oblique or perpendicular angle" |
| '863 Patent, Claim 1 | "traverses a majority of the paired infiltrative surfaces at an oblique or perpendicular angle" |

Next, Plaintiff and Defendant disagree about whether the '863 Patent requires water egress openings. Plaintiff argues that Claims 22 and 26 of the '863 Patent show that water egress openings are not required in the separations between adjacent channels. (Pl.'s Response Br. at 30.) According to Plaintiff, the "claim language refers generally to the area of the pipe with openings, not to the specific location of the egress openings on the pipe. This describes the positioning and specifically the angle of the pipe in relation to the opposed infiltrative surfaces of the channels and the separations." (*Id.*) Plaintiff further contends that Defendant's proposed construction would ignore multiple embodiments that "do not require that the wastewater egress openings be located above both the separations and the infiltrative channels, as Eljen's proposed construction would require." (*Id.* at 32.)

Conversely, Defendant argues that the '863 Patent requires water egress openings both aligned with and between the channels. (Def.'s Reply [Doc. # 78] at 9.) For defendant, "key question is whether the claims of the '863 Patent exclude devices with wastewater egress openings only within the channels, instead requiring at least some openings in the separations between the channels." (Def.'s Resp. Br. [Doc. # 76] at 22.) Defendant urges the Court to reject Plaintiff's construction that "the area of the conduit having wastewater egress openings . . . [refers to] the portion of the pipe that includes wastewater egress openings" as vague and "decidedly not what the claim says." (Def.'s Reply at 9.)

22

To the extent that Plaintiff argues that Court cannot accept Defendant's construction because it excludes some embodiments, that argument is legally unfounded. Only where preferred embodiments are excluded from a specific construction will such an argument apply. *See SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 983 F.3d 1367, 1379 (Fed. Cir. 2021). Here, Plaintiff has maintained that all the embodiments are relevant to the claim construction disputes throughout its arguments and there is no indication in the Patents that one is the preferred embodiment.

The central dispute here is whether at least some of the water egress openings need to cross into the separations between the channels or if they can be confined to the channels themselves. Defendant advocates for the former construction, Plaintiff supports the latter. But, as Defendant observes, "there are probably numerous ways to adequately construe various terms within this claim element." (Def.'s Resp. Br. [Doc. # 76] at 23.)

None of the claims in Group D require additional construction. For example, Claim 22 of the '863 Patent states "an area of the conduit having wastewater supply egress openings, traverses a majority of the channels of the plurality at an oblique or perpendicular angle." (Def.'s Ex. A [Doc. # 71-1] at 18:42-45.) This claim requires knowledge of the terms, egress, traverse, oblique, and perpendicular—all words that have common usage to a person of ordinary skill in the area of design and development of leach field systems or wastewater treatment systems. As the claims do not include "water egress openings," they will not limit the claimed system to require them. *Chapco, Inc. v. Woodway USA, Inc.*, No. 3:15-cv-1665, 2016 WL 7168375, at *2 (D. Conn. Dec. 8, 2016) ("[D]istrict courts are not bound to construe every claim just because the parties [or a party] request it.").

### 5. Whether the claims of the '863 Patent require the channels to be contiguously shaped such that they interconnect (Group B).

| Group B | |
|---|---|
| **'863 Patent, Claims 1 and 22** | "at least two channels being interconnected to each other below their uppermost surface" |
| **'863 Patent, Claim 26** | "the first channel and the second channel being interconnected to each other at least below their uppermost surface." |
| **'863 Patent, Claim 12** | "channels are interconnected at least at a bottom elevation" |
| **'863 Patent, Claim 19** | "the channels of the plurality are interconnected" |
| **'863 Patent, Claim 24** | "the majority of the channels of the plurality are interconnected" |

With respect to the Group B claims, exclusively found in the '863 Patent, the bottom line for Plaintiff is that because the claims, specification, and prosecution history do not show that the applicant disavowed any claim scope or acted as a lexicographer in defining the term "interconnected," the Court should not limit "interconnected" to "contiguously shaped" and should instead give the claim terms their plain meaning. (Pl.'s Resp. Br. [Doc.# 75] at 38-39.) In Plaintiff's view, Defendant's use of the term "contiguous" is nothing more than a rewrite to limit a general term to a specific embodiment from the Specification to avoid infringement. (*Id.* at 34.) Plaintiff also argues that the Specification's use of the term "interconnected" does not contemplate it to mean "contiguous" given that it discusses conduits that are "all interconnected by suitable distribution lines" that are not contiguously shaped. ('863 Patent, Ex. A [Doc. # 71-1] at 3:67-4:2.) Plaintiff offers this as a "clear example" that the patentee did not intend to redefine the term "interconnected" or disavow the common meaning of the

term. (Pl.'s Resp. Br. [Doc.# 75] at 35 (citing *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).)

Defendant argues that Specification and prosecution history demonstrate that an "interconnection" between channels enables redistribution of water to achieve equilibrium that cannot be achieved by simple "connection" of the channels to the wastewater distribution pipe. (Def.'s Reply Br. [Doc. # 78] at 10-11.) Thus the "contiguous shaping" need only "be enabling contiguous flow between the channels apart from the main wastewater distribution pipe." (*Id.*) Defendant contends that Plaintiff's arguments "ignore the '398 Application, which clearly distinguishes "interconnection" from connection to the wastewater-feed-pipe" and rely on the false understanding of the law that the Specification should not be considered unless it "rise[s] to the level of clear and unmistakable disavowal." (*Id.*)

Defendant's position that Plaintiff's arguments are counter to applicable law misunderstands Plaintiff's position. Defendant understands Plaintiff to argue that the specification and prosecution history should be ignored because there is no evidence that the patentee disavowed the common meaning of the word interconnection. But that is not Plaintiff's contention. Instead, Plaintiff maintains that the common meaning of the term "interconnected" is sufficient and the Specification and prosecution history do not clearly evidence an intent to employ a specific meaning different than its common usage. In fact, Plaintiff relies on the Specification's use of the term "interconnected" in a different context to support its position that it does not necessarily mean "contiguous."

It appears that what Defendant suggests is to rewrite the word "interconnected" as "contiguous" but simply replacing one word with another does nothing to aid a jury in understanding the patent language. *See Tech. Innovations, LLC v. Nstein Techs., Inc.*, No. 2:10-CV-341-FTM, 2015 WL 1910434, at *10 (M.D. Fla. Apr. 27, 2015) ("The Court agrees with

Defendants: simply replacing one word of the term at issue with a synonym does not provide any type of a construction."); *Shire ViroPharma Inc.*, 2019 WL 6118253, at *9. Thus, the Court rejects Defendant's Group B constructions and declines to construe the Group B claims found in the '863 Patent.

6. **Whether many of the asserted claims in the '863, '271, and '875 Patents require at least one intervening infiltrative surface between the channels (Group A).**

| Group A | |
|---|---|
| **'863 Patent, Claim 1** | "the separations having a spacing of one foot or more along their length without an intervening intersecting infiltrative surface that connects the adjacent channels within the spacing" |
| **'863 Patent, Claim 22** | "are separated along a majority of their lengths by two or more inches and each have a spacing of one foot or more along their length without an intersecting infiltrative surface that connects the adjacent channels within the spacing" |
| **'863 Patent, Claim 21** | "the separations have a spacing of one foot or more along their length without an intervening perpendicular infiltrative surface that connects the adjacent channels within the spacing" |
| **'863 Patent, Claim 28** | "spacings along their length of one foot or greater in which the surfaces are not interconnected by a third infiltrative surface traversing these spacings." |
| **'271 Patent, Claims 1 and 10** | "sections of one foot or more along their length without an upright interconnecting infiltrative surface interconnecting them to a neighboring infiltrative channel" |
| **'875 Patent, Claim 1** | "sections of one foot or more along its length without an upright interconnecting infiltrative surface interconnecting any of the three infiltrative channels to a neighboring infiltrative channel" |

Finally, the parties cannot find common ground on whether the '863, '271, and '875 Patents require at least one intervening infiltrative surface between the channels. Plaintiff first argues that Defendant's constructions "violate the rule that '[c]laims are properly construed without the objective of capturing or excluding the accused device.'" (Pl.'s Resp. Br. at 39 (citing *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1324 (Fed. Cir. 2009)). Next Plaintiff argues that the claims, read plainly, require a spacing of one foot or more without intervening intersecting infiltrative surface and nothing in that language suggests that such a surface must be present—but if there is one, there must be a foot or more of spacing without that surface. (*Id.* at 40.) Then, Plaintiff posits that defendant's proposed construction "would render dependent claim 2 internally inconsistent: claim 1 would require the presence of an interconnecting infiltrative surface, while claim 2 would prohibit the presence of such a surface. A construction resulting in such an inconsistency cannot be correct." (*Id.*) Plaintiff also contends that the Court should reject Defendant's reliance on the plural "spacings" to require a reading of the claim to include more than one spacing along the length of the length of the separations because that reading misconstrues the language of the claim. (*Id.* at 40-41.) Under Plaintiff's reading, Claim 28 of the '863 Patent demonstrates that the plural "spacings" correlates with the plural "opposing infiltrative surfaces." (*Id.* at 41.)

Defendant argues that "by specifying that the multiple spacings must appear along the length of the surfaces, the claim language explicitly and clearly contradicts Geomatrix's proposal." Defendant contends that "in a device with zero intervening infiltrative surfaces, there is nothing from one end of the channel's length to the other to provide boundaries for the claimed spacing." (Def.'s Opening Markman Br. at 37.) Moreover, Defendant notes that the figures in the '863 Patent that do not show separations between channels without any intersecting infiltrative surfaces, such as Figures 20 and 24, also do not show interaction

between the channels as required by claims 1 and 22. Defendant asserts that this suggests that those "claims cannot have been directed to [those embodiments]" and "they are not proper examples from the Specification to aid in interpreting these claims." (*Id.* (citing Ex A., Figures 20, 24).) On the other hand, "[t]he embodiments in the Specification of the '863 Patent with interconnections below the top surfaces of the channels also all contain intersecting infiltrative surfaces." (*Id.* (citing Ex. A, Figures 16-17).) Defendant also argues that Plaintiff should be held to its statements made during prosecution where "the patentee explicitly admits that a person of ordinary skill in the art would consult Figure 16 and the U-shaped volumes to understand what the patentee means by a spacing of one foot or more without an intervening intersecting infiltrative surface." (Def.'s Opening Markman Br. at 34.) Thus, because Plaintiff "asserts no other argument against Eljen's interpretation of the instances where the claim language uses the plural ("spacings" or "sections")," Defendant argues that its interpretation "must be adopted." (Def.'s Reply Br. at 12.)

Defendant's construction relies on the plural word choice "spacings" to argue that there must be an infiltrative surface between multiple spacings, whereas Plaintiff counters that the plural "spacings" refers to spacings between opposing infiltrative surfaces rather than spacings between each other. Claim 28 of the '863 Patent states: "The system of claim 26 wherein the **opposing infiltrative surfaces** have spacings along their length of one foot or greater in which the surfaces are not interconnected by a third infiltrative surface traversing these spacings." (Def.'s Ex. A, 19:27-30.) (emphasis added). The plain reading of this language appears to run counter to Defendant's construction: "There are at least two distances **between adjacent infiltrative surfaces** . . . ." (emphasis added). Looking simply at the emphasized language, there is an obvious mismatch between the Claim language and construction proposed by Defendant. In light of this ill-fit, the Court need not consider Defendant's argument incorporating the specification and prosecution history. *See Summit*

*6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015) ("Because the plain and ordinary meaning of the disputed claim language is clear, the district court did not err by declining to construe the claim term.")

### B.    The Court's Claim Constructions

Applying the above discussion, the Court includes its constructions below. For claims it has declined to construe, the plain meaning of the claim will serve as the operative construction.

| Claim Constructions | | |
|---|---|---|
| <u>Claim(s)</u> | <u>Disputed Terms</u> | <u>Court Construction</u> |
| **'863 Patent, Claim 1** | "the separations having a spacing of one foot or more along their length without an intervening intersecting infiltrative surface that connects the adjacent channels within the spacing" | Needs no further construction |
| **'863 Patent, Claim 22** | "are separated along a majority of their lengths by two or more inches and each have a spacing of one foot or more along their length without an intersecting infiltrative surface that connects the adjacent channels within the spacing" | Needs no further construction |
| **'863 Patent, Claim 21** | "the separations have a spacing of one foot or more along their length without an intervening perpendicular infiltrative surface that connects the adjacent channels within the spacing" | Needs no further construction |
| **'863 Patent, Claim 28** | "spacings along their length of one foot or greater in which the surfaces are not interconnected by a third infiltrative surface traversing these spacings." | Needs no further construction |
| **'271 Patent, Claims 1 and 10** | "sections of one foot or more along their length without an upright interconnecting infiltrative surface | Needs no further construction |

| | interconnecting them to a neighboring infiltrative channel" | |
|---|---|---|
| '875 Patent, Claim 1 | "sections of one foot or more along its length without an upright interconnecting infiltrative surface interconnecting any of the three infiltrative channels to a neighboring infiltrative channel" | Needs no further construction |
| '863 Patent, Claims 1 and 22 | "at least two channels being interconnected to each other below their uppermost surface" | Needs no further construction |
| '863 Patent, Claim 26 | "the first channel and the second channel being interconnected to each other at least below their uppermost surface." | Needs no further construction |
| '863 Patent, Claim 12 | "channels are interconnected at least at a bottom elevation" | Needs no further construction |
| '863 Patent, Claim 19 | "the channels of the plurality are interconnected" | Needs no further construction |
| '863 Patent, Claim 24 | "the majority of the channels of the plurality are interconnected" | Needs no further construction |
| '863 Patent, Claim 1 | "a first wastewater delivery conduit" | "a conduit capable of delivering wastewater" |
| '863 Patent, Claims 22 and 26 | "a wastewater distribution conduit" | "a conduit capable of delivering wastewater" |
| '271 Patent, Claims 1 and 10 | "a wastewater channel positioned to dispense wastewater to each of the three infiltrative channels" | "a channel capable of delivering wastewater positioned to dispense wastewater to each of the three infiltrative channels" |
| '875 Patent, Claim 1 | "a wastewater dosing pipe positioned to dispense wastewater directly into each of the three infiltrative channels" | "a dosing pipe capable of delivering wastewater positioned to dispense wastewater directly into each of the three infiltrative channels" |
| '278 Patent, Claim 1 | "a distribution conduit positioned and configured to dispense effluent to each of three or more high aspect ratio channels in the set of high aspect ratio channels" | "a conduit capable of distributing wastewater positioned and configured to dispense effluent to each of three or more high aspect |

| | | ratio channels in the set of high aspect ratio channels" |
|---|---|---|
| '278 Patent, Claim 22 | "a distribution conduit positioned and configured to dispense wastewater effluent to each of the high aspect ratio channels in the set of high aspect ratio channels" | "a conduit capable of distributing wastewater positioned and configured to dispense wastewater effluent to each of the high aspect ratio channels in the set of high aspect ratio channels" |
| '278 Patent, Claim 33 | "a distribution conduit positioned and configured to dispense wastewater effluent to each of the high aspect ratio channels in the first set of high aspect ratio channels" | "a conduit capable of distributing wastewater positioned and configured to dispense wastewater effluent to each of the high aspect ratio channels in the first set of high aspect ratio channels" |
| '863 Patent, Claim 1 | "the area of the conduit having the wastewater egress openings" | Needs no further construction |
| '863 Patent, Claim 22 | "an area of the conduit having wastewater supply egress openings, traverses a majority of the channels of the plurality at an oblique or perpendicular angle" | Needs no further construction |
| '863 Patent, Claim 22 | "an area of the conduit having wastewater supply egress openings . . . traverses separations between adjacent channels of the plurality at an oblique or perpendicular angle" | Needs no further construction |
| '863 Patent, Claim 26 | "the area of the conduit having wastewater egress openings traverses the opposing infiltrative surfaces at an oblique or perpendicular angle" | Needs no further construction |
| '863 Patent, Claim 26 | "the area of the conduit having wastewater egress openings...traverses the separation between the opposing infiltrative surfaces at an oblique or perpendicular angle" | Needs no further construction |

| | | |
|---|---|---|
| '863 Patent, Claim 1 | "traverses a majority of the paired infiltrative surfaces at an oblique or perpendicular angle" | Needs no further construction |
| '875 Patent, Claim 1 | "separation spacer" | "a line connected to a pair of anchors connected to adjacent channels" |
| '271 Patent, Claims 1 and 10 | "a first pair of spacing connectors connecting the first and second infiltrative channel, each connector of the first pair of spacing connectors connected to the first infiltrative channel and connected to the second infiltrative channel" | "a first pair of lines, each line attached to a pair of anchors, connecting the first and second infiltrative channel, each connector of the first pair of spacing connectors connected to the first infiltrative channel and connected to the second infiltrative channel" |
| '278 Patent, Claims 1, 22, and 33 | "separation spacer" | "a line connected to a pair of anchors connected to adjacent channels" |
| '278 Patent, Claim 22 | "separation spacer having a length and a first anchor" | "a line, connected to a pair of anchors connected to adjacent channels, having a length and first anchor" |
| '278 Patent, Claim 22 | "the first anchor" | "the first object configured to connect a line to a channel" |
| '278 Patent, Claim 33 | "the first anchor . . . securing the separation spacer relative to a high aspect ratio channel" | "the first anchor . . . securing the line connected to a pair of anchors connected to adjacent channels relative to a high aspect ratio channel" |
| '278 Patent, Claim 22 | "the first anchor . . . securing the separation spacer relative to a high aspect ratio channel" | "the first anchor. . . securing the line connected to a pair of anchors connected to adjacent channels relative to a high aspect ratio channel" |
| '278 Patent, Claim 33 | "the first anchor securing the first separation spacer to a first high aspect ratio channel" | "the first anchor securing the first line connected to a pair of anchors connected to adjacent channels, to a |

32

| | | first high aspect ratio channel" |
|---|---|---|
| '278 Patent, Claim 33 | "the first anchor engages the infiltrative side of the first high aspect ratio channel" | "the first object, configured to connect a line to a channel, engages the infiltrative side of the first high aspect ratio channel" |
| '271 Patent, Claims 1 and 10 | "configured to provide a spacing between the first infiltrative channel and the second infiltrative channel" | Needs no further construction |
| '875 Patent, Claim 1 | "configured to provide a spacing between the first infiltrative channel and the second infiltrative channel" | Needs no further construction |
| '271 Patent, Claim 5 | "located and configured to maintain a relative position between the infiltrative channels that each connector is connected to" | "located and configured to prevent the infiltrative channels that each connector is connected to from being expanded past the predetermined maximum separation distance between them" |
| '271 Patent, Claim 15 | "located and configured to maintain a spacing between infiltrative channels that the connectors are connected to" | "located and configured to prevent the infiltrative channels that each connector is connected to from being expanded past the predetermined maximum separation distance between them" |
| '875 Patent, Claim 5 | "secured and configured so as to inhibit lateral movement between the first infiltrative channel and the second infiltrative channel" | "secured to the infiltrative channels and configured to prevent the first infiltrative channel and second infiltrative channel from being from being expanded past the predetermined maximum separation distance between them" |
| '875 Patent, Claim 8 | "secured so as to inhibit lateral movement between only two infiltrative channels" | "secured to only two infiltrative channels to prevent the infiltrative |

| | | channels from being expanded past the predetermined maximum separation distance between them" |
|---|---|---|
| **'278 Patent, Claim 1** | "separation spacer configured and positioned to inhibit movement of a high aspect ratio channel of the first pair of high aspect ratio channels in a first direction" | "separation spacer configured and positioned between the first pair of high aspect ratio channels to prevent one of the high aspect ratio channels from being expanded past the predetermined maximum separation distance between it and the other high aspect ratio channel |

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 12th day of October 2022