UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GEOMATRIX SYSTEMS, LLC
    *Plaintiff,*

        *v.*

ELJEN CORPORATION,
    *Defendant.*

Civil No. 3:20cv1900 (JBA)

April 10, 2023

**RULING ON PLAINTIFF'S MOTION TO AMEND**

The Court issued its *Markman* Order on October 12, 2022 with its constructions of forty-two terms appearing throughout eighteen claims and four patents. Relevant to this motion, the Court rejected Plaintiff's argument that the terms "spacing connectors" and "separation spacers" needed no construction and ruled instead that Defendant's proposed construction of each term as requiring "lines" and "anchors" was correct. (*Markman* Order [Doc. # 131].) Plaintiff Geomatrix now seeks to amend its infringement contentions to incorporate the Court's constructions, but also seeks to add supplemental contentions based on the Court's construction of "spacing connectors," which it asserts constitutes good cause for amendment. (Pl.'s Mot. for Leave to Amend [Doc. # 140].) Defendant maintains that amendment would be futile because Plaintiff's proposed supplemental infringement contentions are "meritless under the Court's already-existing claim constructions" and disputes the existence of good cause. (Def.'s Opp'n to Leave to Amend [Doc. # 143].)

## I.    Background

The Amended Complaint alleged infringement of claims across four patents: the U.S. Patent Nos. 9,174,863 (the "'863 Patent"); 9,650,271 (the "'271 Patent"); 10,065,875 (the "'875 Patent"); and 10,392,278 (the "'278 Patent"). Each of those patents is from the same patent "family" and stem from Patent Application '968, which became Patent '390 in 2006

("the 2006 Patent"). The relevant passages of the "Specification" referenced throughout appear in the specifications of both the 2006 Parent and the other patents in the family.

### A.   Court's *Markman* Ruling

During the *Markman* claim construction process, Defendant requested the construction of, among other terms, "spacing connector" as used in the '271 Patent, Claims 1 and 10, and separately requested the construction of the phrase following it, "connected to the first infiltrative channel and connected to the second infiltrative channel." (Joint Claim Construction Statement [Doc. # 80] at 17, 21.) It also requested construction of the term "separation spacer" as used in the '875 Patent, Claim 1, '278 Patent, Claims 1, 22, and 33, and of the phrases that surrounded "separation spacer," such as "having a length and a first anchor." (*Id.* at 24.) Defendant proposed construing spacing connectors as "at least two lines, each line attached to a pair of anchors, attached to adjacent channels respectively," while it proposed defining a separation spacer as "a line attached to a pair of anchors attached to adjacent channels respectively." (Def.'s *Markman* Brief [Doc. # 71] at 13.) The only distinction in the two proposed constructions was the difference in the contemplated number of lines.

The Court categorized the disputed terms into groups, one of which is relevant here: Group E, which posed the question of whether the two terms "spacing connector" and "separation spacers" should be "interpreted in light of the Specification's limited description of the invention as solely employing lines and anchors connected to the channels." (*Markman* Order at 13.) Because the terms "spacing connectors" and "separation spacers" appear only in the claims of the respective patents, but nowhere in the Specification of any of the patents or anywhere at all in the original 2006 Patent, Defendant argued that the terms should be construed as a "pair of anchors" that are "attached to permeable sheeting on adjacent channels" and also attached to a "line" allowing the channels to be spaced a predetermined

amount in the ground to facilitate the backfilling of the volumes between adjacent channels."
(*Id.* at 14.) Defendant's basis for this argument was a paragraph from the Specification
describing one of the embodiments, which read:

> Additionally, there are a plurality of pairs of anchors 240, attached to the
> permeable sheeting on adjacent channels. Each pair of anchors 240 is attached
> to a line 244. The anchors 240 and lines 244 are configured to allow the
> channels 228, 232, 236 to be spaced a predetermined amount in the ground to
> facilitate the backfilling of the volumes between adjacent channels 228, 232,
> 236 with sand, or other backfill. However since the lines 244 are attached to
> adjacent channels, the channels 228, 232, 236 may be collapsed (i.e. set close
> together) for shipping. The anchors 240 may be any suitable attaching device,
> including but not limited to staples, plastic staples, washers. The lines 244 may
> be any suitable line, including but not limited to nylon line, rope, twine, chain
> link. To install the disclosed conduit 244, the channels 228, 232, 236 are
> expanded to the maximum separation distance between them, given the
> length of the lines 244.

Because Plaintiff had sought an effective date for its patents of 2006, thus requiring
that the terms be interpreted in light of the 2006 Patent's contents rather than the later
embodiments or claims of the more recent patents, the Court found that "anchors" and "lines"
language must be used to define "spacing connectors" and "separation spacers" based on the
absence of anything else in the 2006 Patent that could be construed as defining those terms.

In the chart at the end of its order, the Court included a separate entry for "separation
spacer" as used in both the '875 Patent, Claim 1, and the '278 Patent, Claims 1, 22, and 23,
construing it as "a line connected to a pair of anchors connected to adjacent channels."
(*Markman* Order, 32.) It also construed "separation spacer" within the context of longer
phrases, such as construing "separation spacer having a length and a first anchor" as "a line,
connected to pair of anchors connected to adjacent channels, having a length and a first
anchor." (*Id.*) However, the Court's order defined "spacing connector" only as part of a longer
phrase:

3

| Original Text from 271 Patent, Claims 1 and 10: | Court's Construction: |
|---|---|
| "a first pair of spacing connectors connecting the first and second infiltrative channel, each connector of the first pair of spacing connectors connected to the first infiltrative channel and connected to the second infiltrative channel" | "a first pair of lines, each line attached to a pair of anchors, connecting the first and second infiltrative channel, each connector of the first pair of spacing connectors connected to the first infiltrative channel and connected to the second infiltrative channel" |

### B.    Plaintiff's Prior Infringement Contention

Plaintiff's initial infringement contentions identified the top cardboard edge spacers in certain of Defendant's products as one variation of infringing "spacing connectors." An example is shown by the diagram below:



a first pair of spacing connectors connecting the first and second infiltrative channel, each connector of the first pair of spacing connectors connected to the first infiltrative channel and connected to the second infiltrative channel and configured to provide a spacing between the first infiltrative channel and the second infiltrative channel, neither connector of the first pair of spacing connectors comprising a pipe;

✓ The Prior Mantis 536-8 Series includes a first pair of spacing connectors (i.e., the upper edge spacers) connecting the first and second infiltrative channel, each connector of the first pair of spacing connectors connected to the first infiltrative channel and connected to the second infiltrative channel and configured to provide a spacing between the first infiltrative channel and the second infiltrative channel, neither connector of the first pair of spacing connectors comprising a pipe.

First pair of spacing connectors

4

Plaintiff also identified the first, second, and third infiltrative channels that it contends that the spacing connectors were connecting as three adjacent channels, as seen below:



C.      **New Proposed Supplemental Contention**

Plaintiff now seeks to amend its infringement contentions for '271 Patent based on the Court's construction of "spacing connectors" as lines connected to a pair of anchors. Specifically, it identifies the cardboard edge spacers present on certain Defendant products as the "lines," and identifies the white "retaining bands, alone or in combination with the staples connecting the band" to the cardboard "line," as the "anchors." Plaintiff contends that the "first", "second", and "third" infiltrative channels as the channels that are connected to the white retaining bands, regardless of sequence, and the "spacing" as any part of the void between the infiltrative surfaces. An example of its new proposed contention regarding Defendant's products is below:



First pair of anchors

First pair of lines

First infiltrative channel

Spacing

Second infiltrative channel



Second infiltrative channel

Third infiltrative channel

Second pair of lines

spacing

Second pair of anchors

Plaintiff further asserts that "even if the cardboard edge spacers and retaining bands/staples do not literally equate to the 'lines' and 'anchors' referred to in the Court's construction," it should be "permitted to amend its infringement contentions to explain why the Accused Products infringe under the doctrine of equivalents." (*Id.* at 18.) Plaintiff also seeks to "incorporate the Court's constructions for the 'wastewater delivery conduit' and 'located and configured to maintain a relative position' terms, but its infringement theory for those terms will not change by including the Court's constructions." (*See* Pl.'s Mot. at 11, n. 6.) Defendant voices no objection to those changes.

## II.    Legal Standard

"It is well-settled in this Circuit that the Rule 16(b) 'good cause' standard, rather than the more liberal standard of Rule 15(a), governs a motion to amend filed after the deadline a district court has set for amending the pleadings." *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000)[1]. Although the District of Connecticut does not have specific patent rules governing amendment of contentions, "many local district court patent rules for amending contentions" allow "modification of a court-imposed schedule 'only for good cause and with the judge's consent.'" *CellCast Techs., LLC v. United States*, 152 Fed. Cl. 414, 420 (2021). "[B]oth diligence and prejudice are relevant considerations" when determining whether there is "good cause" to amend contentions in a patent infringement case. *MorphoTrust USA, LLC v. United States*, 132 Fed. Cl. 419, 420 (2017); *see also Convolve, Inc. v. Compaq Computer Corp.,* 643 F. Supp. 2d 336, 343 (S.D.N.Y. 2008). Some courts also weigh additional factors, including "the importance of what is to be excluded" and "the availability of a continuance and the effect of a delay upon the judicial proceedings." *Midwest Athletics &*

---

[1] Unless otherwise indicated, this opinion omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

*Sports All. LLC v. Xerox Corp.*, No. 19-CV-6036W, 2021 WL 2906372, at *5 (W.D.N.Y. July 9, 2021) (citing *Takeda Pharm. Co. v. Sun Pharma Glob. FZE*, 2016 WL 9229318, *4 (D.N.J. 2016)).

## III.   Discussion

The parties' arguments touch on both the substance of the Court's *Markman* ruling and on the standard for infringement contention amendment. First, Defendant argues that Plaintiff's amendment would be futile because it misconstrues the Court's prior *Markman* ruling, and its proposed amendments are not viable under the Court's construction of the term "spacing connector"; Plaintiff, on the other hand, maintains that nothing in the Court's *Markman* ruling precludes its new infringement contentions. Second, Defendant argues that Plaintiff fails to show good cause for amendment, and that it will be prejudiced by any amendment; Plaintiff argues that it has been diligent in seeking amendment, and that any prejudice to Defendant can be minimized. Because the question of prejudice turns in part on whether the term "spacing connectors" requires any further construction, possibly through additional *Markman* proceedings, the Court begins with the parties' arguments as to futility. *See Int'l Controls & Measurements Corp. v. Honeywell Int'l, Inc.,* No. 512CV1766LEKATB, 2018 WL 11426743, at *4 (N.D.N.Y. May 10, 2018) (finding that the futility of proposed amendments was properly considered in the context of a motion to amend infringement contentions).

### A.   Amendment of the Complaint

Defendant argues that Plaintiff's amendment of its infringement contentions would be futile because it has not also sought to amend its complaint. However, the cases Defendant cites for this proposition are non-patent cases that do not discuss the interaction between infringement contentions and the complaint, nor the effect of amending one but not the other, and Defendant cites to no case law supporting the proposition that a plaintiff must

amend the complaint in order to supplement its contentions. Although very few cases have addressed the issue directly, at least one court has found that a plaintiff is "entitled to revise its theory of infringement regardless of whether it sought to amend its complaint." *Zito LLC v. CRJ, Inc.*, No. CV JKB-17-1733, 2017 WL 6388821, at *2 (D. Md. Dec. 14, 2017). Because Defendant fails to explain why the complaint would need amending for Plaintiff to also bring supplemental infringement contentions, the Court rejects Defendant's argument.

### B. Meaning of "Spacing Connectors"

Defendant argues that Plaintiff's proposed supplemental infringement contentions are not viable because a "spacing connector" must connect *adjacent* infiltrative channels. (Defendant's Opp'n [Doc. # 143] at 11-12.) According to the Defendant, the "Court's analysis clearly showed that it considered a 'spacing connector' to be the same thing as a 'separation spacer.'" (*Id.* at 11.) The Court construed a "separation spacer" as "a line connected to a pair of anchors connected to adjacent channels," and construed both "separation spacer" and "spacing connector" by referencing the passage in the Specification that describes lines and anchors, which also notes that the lines and anchors are "attached to permeable sheeting on adjacent channels." From this, Defendant maintains that the Court's Order should be interpreted as applying the definition of "separation spacer" to "spacing connector," including the requirement of adjacency, and that "[t]he omission of a 'spacing connector' entry in the Court's concluding claim construction chart, separate from 'separation spacer,' appears to be an unintentional omission." (*Id.*) Under its interpretation of the Court's order, Defendant asserts that Plaintiff's proposed amended claim infringement contentions would be futile, because their proposed contentions do not show spacing connectors that are connected to adjacent channels.

Plaintiff disagrees with Defendant's characterization of the Court's order, because while "[t]he claims of the '271 Patent recite 'first,' 'second,' and 'third' infiltrative channels,

[] the claims do not require these infiltrative channels to be adjacent one another." (Pl.'s Mot. at 9.) Plaintiff points to language in the Specification stating, "the terms 'first', 'second', and 'third', and the like may be used herein to modify elements performing similar and/or analogous functions. These modifiers do not imply a spatial, sequential, or hierarchical order to the modified elements unless specifically stated." (*Id.*) Plaintiff also points to the language of the '271 Patent claims which require spacing connectors to be "configured to provide *a spacing* between the first infiltrative channel and the second infiltrative channel" as open-ended language that should be construed broadly, rather than being narrowed by the word "adjacent." (*Id.*) Because the Court did *not* incorporate the word "adjacent" into the section of the chart in which it construed "spacing connector," but did use the word "adjacent" when construing "separation spacer" despite Defendant's proposal to define "spacing connector" as "at least two lines, each line attached to a pair of anchors attached to **adjacent** channels respectively", Plaintiff maintains that the Court "drew a clear distinction" requiring adjacency *only* for separation spacers, and not for "spacing connectors." (*Id.*) Plaintiff contends that the Court's *Markman* order "only shows that the terms 'spacing connectors' and 'separation spacers' should include reference to 'anchors' and 'lines,' not that the two terms must be identical." (Pl.'s Reply [Doc. # 144] at 2-3.)

The Court was asked two overarching questions about spacing connectors as part of the *Markman* proceedings: "Whether the "spacing connector" and "separation spacer" elements in the '271, '875, and '278 Patents should be interpreted in light of the Specification's limited description of the invention as solely employing lines and anchors connected to the channels," (*Markman* Order at 13), and "[w]hether the elements of the asserted claims dealing with how the separation spacer/spacing connector inhibit and facilitate movement be construed in light of the Specification's description of how the anchors and lines accomplish such action." (*Id.* at 18.) Neither of those questions involved a

determination of whether the connectors or spacers needed to be connected or attached to adjacent infiltrative channels. While it might have been a peripheral issue to the extent Defendant's proposed construction of both spacing connectors and separation spacers needed to be connected to adjacent infiltrative channels as part of their definition in its *Markman* briefing, the parties did not specifically touch on adjacency at oral argument or otherwise indicate that it was a determinative issue for any of the claims, which is why the Court did not address it in its ruling. The Court thus clarifies that it has so far expressed no opinion on whether a "spacing connector" must be lines and anchors connected or attached to adjacent infiltrative channels.

The Federal Circuit has held that "district courts may engage in rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves." *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006). Some courts have accordingly considered motions for clarification as part of this "rolling" process of claim construction and issued orders offering clarification of a claim for which the court used its own construction and which the parties found unclear. *See* Robert A. Matthews Jr., "Motions For Clarification of a Claim-Construction Ruling," 1 Annotated Patent Digest § 3:37.50 (March 2023 Update). However, the parties' briefs focus only on whether the Court's prior order already decided the issue, rather than on fully briefing the merits of their respective positions, giving the Court no way of knowing whether there might be any further evidence or portions of the claims, specifications, patent applications, or patent prosecution history that might inform the Court's understanding of the term. As such, the Court does not view its ruling on this motion as an appropriate vehicle to resolve the issue by formally adopting either Plaintiff or Defendant's proposed constructions.

11

Because the proposed supplemental infringement contention and associated doctrine of equivalent theory are not futile under the Court's *Markman* Order, the Court considers now whether there is good cause to amend.

## C.  Good Cause to Amend

Defendant argues that Plaintiff cannot establish good cause because it "has long known of Eljen's lines-and-anchors position," undermining its claim of diligence, and that permitting leave to amend would require "reopening of fact discovery and the *Markman* process," causing it significant prejudice. (Def.'s Opp'n at 1-2.) The Court addresses each argument in turn.

### 1.  Diligence and the Reason for Delay

"The burden is on the movant to establish diligence rather than on the opposing party to establish a lack of diligence." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006). The movant must show "not only that it promptly moved to amend its contentions, but also that it was diligent in discovering the *basis* for its proposed amendment." *Williamson ex rel. Home Bondholders' Liquidating Tr. v. Verizon Commc'ns Inc.*, 2013 WL 12313349, *2 (S.D.N.Y. 2013). "Considerations in determining a party's diligence include additional or unexpected results of discovery, along with the possibility of unanticipated construction of claim terms according to the court's claim construction order." *Cellcast Techs., LLC v. United States*, 2019 WL 5959571, *5 (Fed. Cl. 2019).

The *Markman* Order was issued on October 12, 2022; Plaintiff notified Defendant of its intent to seek leave to amend its infringement contentions based on the Court's construction of "spacing connector" within a week, followed up with phone calls and emails. The motion for leave to amend was filed by November 18, 2022, after the parties determined that they would not reach an agreement on the right to amend. In Plaintiff's view, its diligence should be measured as the time from the issuance of the *Markman* Order to the time its

motion was filed; it maintains that it did not identify "lines" and "anchors" in its contentions *before* the *Markman* order was issued because its position was that those terms did not limit the meaning of "spacing connectors," and that there was "no need" to identify channels other than the two adjacent ones as the "first" and "second" infiltrative channels, because the cardboard edge spacers connected all of the infiltrative channels. (Pl.'s Mot. at 7.) Plaintiff maintains that it would have been "burdensome and a substantial waste of resources for Geomatrix to amend its contentions for each of Eljen's proposed claim constructions" prior to the *Markman* Order given the number of claims that Defendant sought to construe, because it believed the Court would reject Defendant's proposed constructions, and because the Court did ultimately reject many of Defendant's proposed constructions. (Pl.'s Reply [Doc. # 144] at 9-10.)

In support, Plaintiff cites to a number of cases and local patent rules that measure diligence from the time after an adverse *Markman* Order is issued, including the Local Patent Rules for the Eastern District of Texas and for the Middle District of North Carolina, (Pl.'s Mot. at 22), and *CellCast Techs., LLC v. United States*, 152 Fed. Cl. 414, 417 (2021), where plaintiff sought to amend its contentions after the Court's claim construction order was issued. The court there recognized "a split view in other jurisdictions regarding whether a moving party's diligence should be measured from the issuance of a claim construction order or from service of claim construction briefs" and that "there is no clear rule in any jurisdiction—including the Court of Federal Claims and the RCFC patent rules—that governs the timeframe for measuring a party's diligence after a claim construction order." *Id.* at 425. *Cellcast* ultimately rejected requiring that a *Markman* ruling be "unexpected or unforeseeable" for it to constitute good cause, and instead applied the standard that "the measurement of diligence starts from a claim construction order that is different from a party's proposal." *Id.*

However, the rationale on which *Cellcast* relied came from *Holmberg v. United States,* No. 14-cv-284, Docket No. 85 (Fed. Cl. Dec. 5, 2016), in which the court held that diligence should be measured from the claim construction order because a different construction would make it reasonable for the party to "dig deeper than [it] had previously." Under this reading of *CellCast,* diligence should start from a claim construction order different from a party's proposal, but not if the party has already had the opportunity to "dig deep" on the issue and otherwise had every reason to expect that the court's adoption of a different construction would give rise to the new infringement contention. *Holmberg's* reasoning also aligns with the holding in *O2 Micro,* 467 F.3d at 1367, where the Federal Circuit found a lack of diligence when Plaintiff "had reason to know of" Defendant's theory of the product when it received a data sheet identifying a component critical to its theory of the product in Defendant's initial disclosures, but waited until after the claim construction hearing and three months after depositions to serve proposed amended contentions. *Id.* There, the Federal Circuit rejected Plaintiff's arguments that it had needed the benefit of the depositions and further time to develop its theory because Plaintiff failed to explain why it could not have diligently developed the theory in the amended contentions sooner. *Id.*

Although the Second Circuit has not spoken on the issue, other courts from within this circuit have taken a different position than in *Cellcast*. In *Bausch & Lomb Inc. v. Vitamin Health*, Inc., No. 13-CV-6498, 2015 WL 13574308, at *3 (W.D.N.Y. Sept. 29, 2015), the parties were engaged in a very similar dispute: the plaintiff urged that the term "approximately" was clear and did not need to be construed by the court, while the defendant argued that "approximately" should be construed to limit the range for a particular ingredient in a disclosed supplement. In that instance, however, the result was reversed; the court sided with plaintiff, finding that "approximately" had its ordinary meaning of "reasonably close to." *Id.* The defendant subsequently sought to amend its invalidity contentions. The court held

that while the claim construction in its order was "different" than the one urged by defendant seeking to amend its invalidity contentions, that alone did not establish good cause because "[a] party in a patent dispute cannot stick its head in the sand so as to be able to claim diligence by deliberately waiting until after claim terms are formally construed by the Court in a written *Markman* decision to revise their invalidity contentions." *Id.* Instead, the court determined that diligence should be measured from the point at which from the defendant should have known that their amendments would be needed if the Court endorsed the claim construction views urged by the other side, such as "the day the moving party received the proposed constructions" or the time the party "became aware of the risk that [the court] could adopt [the opposing party's] proposed constructions." *Id.*

Defendant relies on this same rationale to argue that Plaintiff has not been diligent because it has long known about both the lines-and-anchors construction of "spacing connectors" based on a letter sent to Plaintiff's counsel on June 8, 2017, where Defendant responded to Plaintiff's letter accusing it of infringement by arguing that "[t]he fatal flaw in your theory of potential infringement is that it relies upon an impermissible broadening of the scope of the recited 'spacing connectors' as being far more than 'lines' and 'anchors' disclosed in the 2006 CIP." (Def.'s Opp'n at 19; Def.'s Opp'n, Exh. A.) Defendant also points to Plaintiff's counsel's arguments at the *Markman* hearing that the lines-and-anchors construction was being proposed "for the purpose of creating noninfringement positions" as evidence that Plaintiff understood the potential consequences of the Court adopting the Defendant's construction to its own infringement contentions, but nevertheless chose not to seek leave to amend prior to the issuance of the *Markman* Order. (Def.'s Opp'n at 5-6.) Rather than being diligent, Defendant asserts that "Geomatrix has long known about the lines-and-anchors" issue but chose to "tak[e] its chances with the Court on whether it would agree with

Eljen on that issue" rather than proposing alternative infringement theories to prepare for that eventuality. (*Id.*)

The Court declines to adopt the *Cellcast* standard and instead adopts the one used in *Bausch & Lomb,* under which Plaintiff has not been diligent in seeking to amend. Plaintiff was "well aware" prior to serving infringement contentions that Defendant was relying on a lines-and-anchors construction of the term "spacing connector," going all the way back to Defendant's articulation of its position in the June 2017 letter. *Bausch & Lomb,* 2015 WL 13574308, at *3. To the extent Plaintiff may argue that the Court's construction of "spacing connector" was not literally identical to Defendant's proposed construction, thus making it "surprising," the Court rejects that argument; the only difference is that the word "adjacent" was in Defendant's proposed construction but not in the Court's, which can hardly be considered surprising or even unfavorable to the Plaintiff given that its position is and has been that "spacing connector" does not require adjacency. The relevant terms of the definition here—the application of the "lines" and "anchors" language to "spacing connector—was a potential construction known to Plaintiff since 2017.

The consequences of a ruling in Defendant's favor were "readily apparent" to Plaintiff's "experienced patent lawyers long ago[;]" nevertheless, rather than preemptively amending, it adopted a "wait and see" approach to avoid what it determined would be a substantial waste of resources based on its confidence that the Court would take its side. *Id.* at *3-4. Permitting amendment would reward such a strategy and is inconsistent with the "philosophy behind amending claim charts," which "is decidedly conservative and designed to prevent the 'shifting sands' approach, to a party's contentions." *Id.*[2] Plaintiff made its

---

[2] Defendant also argues that Plaintiff should be estopped from seeking to amend its infringement contentions because at the prefiling conference Plaintiff sought before amending its complaint, Plaintiff's counsel said "[w]e don't want to be presenting the Court with claims and claim construction and then have a process where [Defendant] later

choice as a matter of litigation strategy, and it must now live with the consequences of that choice.

The same considerations apply in equal force to Plaintiff's proposed supplemental amendment to include a "doctrine of equivalents" infringement theory. (Pl.'s Mot. at 18-19.) Plaintiff relies on language in its initial infringement contentions that it "asserts infringement under the doctrine of equivalents to the extent that the differences between any Infringing Eljen Products and any claim limitation are insubstantial" to claim that it reserved its right to add a doctrine of equivalents theory. (Pl.'s Mot. Exh. I. [Doc. # 140-10].) However, courts have repeatedly held that conclusory invocations of the doctrine that lack substantive supporting information do not provide good cause to amend for the purpose of bolstering those conclusory assertions. *See, e.g.*, *Razor USA LLC v. DGL Group, Ltd.*, 2022 WL 44627, \*5–\*8 (D.N.J. 2022) (denying leave to amend to include a doctrine of equivalents theory because its "repetitive invocation of the doctrine throughout the infringement contentions does not change the fact the assertion was merely conclusory"); *see also* Robert A. Matthews, Jr., "Doctrine of equivalents and structural equivalents infringement contentions—Reserving right to later assert doctrine of equivalents", 1 Annotated Patent Digest § 2:38.50 ("[g]enerally, courts will not give credence to a patentee's attempt, in its infringement contentions or elsewhere, to unilaterally 'reserve the right' to later assert infringement under the doctrine of equivalents.") Plaintiff offers no explanation of why it could not have

---

disclose[s] defenses and we have to come back and revisit those. *We just want to make sure that both parties have fully disclosed their positions and their defenses.* Then we narrow and go into claim construction." (Prefiling Conference Tr. [Doc. # 58] at 8, 22) (emphasis added.) While this was not an explicit commitment not to seek amendment to its infringement contentions, Plaintiff's counsel's comment demonstrates a clear understanding of the prejudice that could be caused by a "shifting sands" approach in which the parties theories' changed after claim construction.

asserted this specific doctrine of equivalents theory until now other than the justifications asserted and rejected above.

Plaintiff's lack of diligence alone is grounds to deny its motion to add supplemental infringement contentions. However, there is a second independent reason to deny the motion to amend: the prejudice that amendment would cause Defendant is too great to justify.

### 2. Prejudice

"Factors to consider when determining whether prejudice exists include whether the non-moving party has been genuinely surprised or harmed, . . . whether discovery would be reopened, . . . the effect of amendments on the construction of claim terms, . . . and whether experts have staked out comprehensive positions with respect to claim construction." *Return Mail, Inc. v. United States*, 152 Fed. Cl. 455, 459 (2021).

### a. *Markman* Proceedings

Defendant asserts that if "spacing connectors" was not construed to require adjacency, and the terms "first," "second," and "third," in conjunction with "spacing connectors" were also not construed to require adjacency, then it will seek further *Markman* proceedings to resolve those issues if the motion to supplement is granted. Plaintiff argues that no further *Markman* proceedings are needed to consider the question of adjacency, and that there is no undue prejudice to Defendant because it cannot "complain that it was in any way shorted on the claim construction process" given the number of terms it submitted for construction, and its lack of success on those terms. (Pl.'s Mot. at 23.)

Whether Defendant had the opportunity to submit proposed claim constructions prior to the current motion has nothing to do with whether it would need further claim construction as a result of *new* infringement contentions, particularly when as Defendant observes, the Plaintiff's proposed amendments do more than simply incorporate the Court's

constructions into existing contentions.[3] As Defendant argues, Plaintiff's proposed contentions instead require Plaintiff "to fundamentally shift its identification of many other elements of the Mantis system," which in turn raises issues such as whether "first," "second", and "third" must indicate adjacent channels or not, an issue not raised or before the Court at the prior *Markman* hearing. (Def.'s Opp'n at 13.) Particularly notable is that Plaintiff relies on the Specification to suggest that "first," "second," and "third" need *not* be given their "plain meaning" of three things each following immediately after the other. This is a 180-degree reversal from Plaintiff's strenuous insistence during the *Markman* briefing that all the words in each of the patents should be given their plain meaning. In other words, Plaintiff is, as Defendant argues, "implicitly acknowledging that additional claim construction analysis is necessitated by Geomatrix's evolved infringement contentions." (*Id.* at 13-14.) And because Plaintiff never referenced the Specification passage explaining that first, second, and third infiltrative channels are not necessarily sequential during the *Markman* proceedings, Defendant cannot be reasonably expected to have anticipated the new contentions Plaintiff now proposes such that it should have requested construction of the terms.

 Defendant's awareness that Plaintiff asserted that the cardboard edge spacers were spacing connectors in several of its infringement contentions does not mitigate any prejudice to Defendant, because Plaintiff neither identified the straps and staples as "anchors" nor did it identify non-adjacent channels as the "first," "second," and "third" channels such that Defendant could be considered on notice. Thus, Defendant has been prejudiced both because it has been "genuinely surprised" by Plaintiff's new contentions and because it was deprived

---

[3] Defendant voices no objection to the proposed amendments that merely incorporate the Court's construction for the terms "wastewater delivery conduit" and "located and configured to maintain a relative position" terms into its existing contentions in order to reflect the correct language and without changing the substance of those contentions, and the Court grants leave to amend for that purpose.

of the opportunity to pursue constructions of the relevant terms during the *Markman* process; the only way to cure that prejudice would be to conduct another round of claim construction, which while limited, will impose both a cost and a delay that also prejudices the parties.[4] *See Rd. Widener, LLC v. Robert H. Finke & Sons, Inc.,* 579 F. Supp. 3d 345, 355 (N.D.N.Y. 2022) (finding prejudice when "new contentions would very likely require additional claim constructions before the issues related to infringement can be litigated, resulting in additional time and expense for both parties.")

### b. Re-Opening Discovery

Plaintiff contends that there is no additional fact discovery Defendant can identify that it would have taken, and that it has agreed to allow Defendant to depose Fred Grasso (Plaintiff's patent prosecution counsel) and David Potts (inventor of the '271) on any "legitimate" question raised by the resolution of the motion if it is permitted to amend, thus mitigating any potential prejudice. (Pl.'s Mot. at 24-25.) Plaintiff further represents that the parties have "agreed to postpone the service of technical expert reports and technical expert depositions" until resolution of this motion to avoid duplicative expert work or expense. (Pl.'s Mot. at 17.)

However, Defendant asserts that it was deprived of the opportunity to consider the photographs and documents that were attached to Plaintiff's motion, including the opportunity to question witnesses on them, or to produce discovery to Plaintiff for its defense such as materials demonstrating that the "straps" identified as anchors are meant only for shipping of the product, and that they are not "connected" to the channels. (Def.'s Opp'n at 16-17.) Defendant also points out that the reason the two depositions remain open is not because of Plaintiff's generosity, but because Plaintiff was sanctioned for discovery

---

[4] Defendant also contends that a number of other claims will also need construction, including "anchors," "pairs," "staples," and "spacing."

misconduct and was required to make the witnesses available for questioning on wrongfully withheld documents. (Def.'s Opp'n at 17.) Defendant further notes that while some expert discovery has been postponed, expert discovery on damages has already begun on the operative infringement contentions, including the exchange of reports and the completion of three expert depositions, at least one of which would also need to be re-opened if the Plaintiff's motion is granted. (*Id.* at 17-18.)

At a minimum, if the Court allows amendment of the infringement contentions, it will need to engage in further claim construction and *Markman* proceedings and allow for some limited further discovery. Both will cause further delay, and cause prejudice both in the form of time expended and costs to Defendant. The cause of the prejudice lies solely on Plaintiff's shoulders, because as discussed above, Defendant was not on notice of the possibility of this new infringement contention, and thus could not have prepared for it by seeking either discovery or further claim constructions prior to the close of those periods in the case timeline.

Because Plaintiff failed to carry its burden in showing both its diligence and a lack of prejudice to Defendant, it has failed to show good cause to amend, and its motion to amend its infringement contentions with new supplemental contentions is denied.

### D.    Other Issues for Clarification

Plaintiff also raises two additional points for clarification; Defendant takes no position on Plaintiff's requests for clarification in substance.

### 1. "Attached"

| Original | Defendant's *Markman* proposal | Court's Construction | Plaintiff's proposed clarification |
|---|---|---|---|
| a first pair of spacing connectors connecting the first and second infiltrative channel, each connector of the first pair of spacing connectors connected to the first infiltrative channel and connected to the second infiltrative channel | At least two lines, each line attached to a pair of anchors attached to adjacent channels respectively, attached to the first infiltrative channel and attached to the second infiltrative channel | a first pair of lines, each line **attached** to a pair of anchors, connecting the first and second infiltrative channel, each connector of the first pair of spacing connectors connected to the first infiltrative channel and connected to the second infiltrative channel" | a first pair of lines, each line **connected** to a pair of anchors, connecting the first and second infiltrative channel, each connector of the first pair of spacing connectors connected to the first infiltrative channel and connected to the second infiltrative channel" |

During the *Markman* process, the Plaintiff took issue with Defendant's proposed replacement of the terms "connected" with "attached," asserting that "connected" both should be interpreted based on its plain meaning and that it had a different meaning from attached. (*Markman* Order at 14.) The Court agreed and said that it "will not replace" the word "connected" with the word "attached." (*Id.* at 17.) However, the Court's construction for '271 Patent, Claims 1 and 10, uses the word "attached" in the first part of the phrase but "connect" in the others, as bolded above. Plaintiff contends that this is a typographical error.

The Court's construction as written is correct. The Court left in place the word "connect" or "connecting" wherever it was used in the claim originally; the word "attached" as used in the Court's construction is not a replacement, but an addition that comes directly from the Specification language which it used to construe "spacing connector" as "lines" and

"anchors" that were "attached" to either each other, the permeable sheeting, or the channels. "Attached" is also more appropriate given the Specification's definition of anchors as "any suitable *attaching* device." (emphasis added.) There is no further need for correction or clarification.

**2. "Pairs"**

| Original | Court's Construction | Plaintiff's proposed clarification |
|---|---|---|
| **Claim 1**:<br>a first pair of spacing connectors connecting the first and second infiltrative channel, each connector of the first pair of spacing connectors connected to the first infiltrative channel and connected to the second infiltrative channel and configured to provide a spacing between the first infiltrative channel and the second infiltrative channel, neither connector of the first pair of spacing connectors comprising a pipe | **Claims 1 and 10:**<br>a first pair of lines, each line attached to a pair of anchors, connecting the first and second infiltrative channel, each connector of the first pair of spacing connectors connected to the first infiltrative channel and connected to the second infiltrative channel" | **Claim 10:**<br>"a first line, the first line connected to a pair of anchors, connecting the first and second infiltrative channel, the first spacing connector connected to the first infiltrative channel and connected to the second infiltrative channel" and "a second line, the second line connected to a pair of anchors, connecting the second and third infiltrative channel, the second spacing connector connected to the second infiltrative channel and connected to the third infiltrative channel" |
| **Claim 10**:<br>A first spacing connector connecting the first and second infiltrative channel, the first spacing connector connected to the first infiltrative channel and connected to the second infiltrative channel and configured to provide a spacing between the first infiltrative channel and the second infiltrative channel | | |

Plaintiff notes that while Claim 1 referenced "pairs" of spacing connectors, Claim 10 did not; nevertheless, the Court described a "pair" of lines connected to a "pair" of anchors in its construction of both Claim 1 and Claim 10. The Court clarifies that Claim 10 should not reference "pairs" of lines and anchors, but that it should retain the word "attached" based on the discussion above, and re-construes Claim 10 as follows:

> "a first line, the first line attached to a pair of anchors, connecting the first and second infiltrative channel, the first line and pair of anchors connected to the first infiltrative channel and connected to the second infiltrative channel" and "a second line, the second line attached to a pair of anchors, connecting the second and third infiltrative channel, the second line and pair of anchors connected to the second infiltrative channel and connected to the third infiltrative channel."

## IV.    Conclusion

Plaintiff's motion to amend [Doc. # 140] is GRANTED in part to permit it to "incorporate the Court's constructions for the 'wastewater delivery conduit' and 'located and configured to maintain a relative position' terms," *see supra* n.3, but is DENIED as to its request to supplement its infringement contentions with a new infringement contention and related doctrine of equivalents theory. The motion for clarification is GRANTED in part and DENIED in part as detailed above.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 10th day of April 2023